2004 UT App 447

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Alan INGLEBY, Defendant and Appellant.**

No. 20030792–CA.

Court of Appeals of Utah.

Nov. 26, 2004.

K. Andrew Fitzgerald, Moab, for Appellant.

Mark L. Shurtleff, atty. gen., and Brett J. DelPorto, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and THORNE, Jr.

## OPINION

THORNE, Jr., Judge:

¶ 1 Michael Ingleby appeals from his conviction of possession of a controlled substance in a drug free zone, in violation of Utah Code section 58–37–8(2)(a)(i) (2002). We affirm.

## BACKGROUND

¶ 2 On the morning of November 5, 2000, Ingleby was stopped and detained by a Moab City Police Officer who suspected that Ingleby was the subject of an outstanding arrest warrant. During the encounter, the officer noticed that Ingleby was speaking quietly, and that he often mumbled. He also noticed that Ingleby was shivering, avoided eye contact with the officer, and repeatedly put his hands in his pockets. Near the end of the detention, Ingleby walked around his motorcycle, and turned his back to the officer. His hands went to his pockets and then to his face where he lighted a cigarette. Soon thereafter, the officer confirmed the existence of the arrest warrant. He arrested and searched Ingleby, but did not search Ingleby's mouth, boots, or coat sleeves, and, after examining the rear seat area to ensure it was empty, he handcuffed and placed Ingleby in the back of the patrol car.

¶ 3 During the drive to the jail, the officer felt his seat rise in the area occupied by Ingleby's feet. He also heard a sound that convinced him that Ingleby was attempting to get something from his pockets. Soon thereafter, Ingleby's speech improved, getting louder and more clear. When the duo arrived at the jail, the officer removed Ingleby from the car and noticed two small plastic baggies where Ingleby's feet had been. Further search revealed two more baggies under the driver's seat. Upon examination, the officer noted that the baggies were "moist" and that they each had teeth marks, leading the officer to believe that Ingleby had carried the bags in his mouth until he had an opportunity to spit them out onto the patrol car floor. Tests showed that the baggies contained about 2 grams of methamphetamine; consequently, Ingleby was charged with possession of a controlled substance with intent to distribute, or, in the alternative, possession of a controlled substance.

¶ 4 All of this information was presented to the jury at trial, as well as testimony that no fingerprints were found on the baggies. Ingleby testified to counter the officer's description of his conduct at the time of the arrest. He testified that he was shivering because he was cold due to his November motorcycle ride, that he is naturally a quiet person, and that his mouth was empty at the time of his arrest. He also testified that the officer never looked into his mouth and that the drugs were not his, leaving the jury to infer that the drugs were left in the patrol car by a previous occupant and only recently discovered by the officer. The case was sent to the jury.

¶ 5 During deliberations, the jury sent the judge a question asking: "Could we get clarification on police procedure when removing potential evidence from a patrol car? In other words, how did Officer Hanson remove the bags from the car without getting his fingerprints on the bag?" The trial court

consulted with counsel, entertained reopening the case to allow the State to present evidence on this question, but in the face of Ingleby's objections instead chose to discuss the question with the jurors. The jurors were recalled and the court made the following statement:

> Now, this—this question deals with one of the peripheral issues in the case, which is fingerprints on the baggies.
>
> I'm prepared to have evidence presented to answer your question, but I think you ought to know that there is no rule or decision of a higher court telling me whether I can actually do that or not. So if I do it, I'm going to be creating an opportunity for someone dissatisfied with your verdict to explain that after evidence was closed, and closing arguments were presented, and you went into the jury room that we brought you back in and gave you some more evidence. I'm not aware of that ever being authorized, or not authorized.
>
> If this is something that you think you really need to have in order to be able to make up your mind in this case, then I'll do it, because otherwise you won't be able to make up your mind and we'll have to do everything all over anyway.
>
> But if its more a case of just having that little additional bit of assurance that you'd like to have before you reach a verdict, I'd encourage you to withdraw the question.

Following the trial court's soliloquy, a juror responded: "Your honor, if you think it's peripheral, then I'll withdraw the question." The question was withdrawn and the jury returned to its deliberations.

¶ 6 Defense counsel then, however, objected to the trial court's use of the word "peripheral" and requested a mistrial. The trial court overruled the objection and denied the request for a mistrial.[1] Ingleby was subsequently convicted of possession of a controlled substance. He then filed his notice of appeal, but he did so before the court announced his sentence, and, obviously, before his sentence was officially entered.

---

1. The court later explained to counsel that the issue was "not important enough to create a doubt."

## ANALYSIS

### I. Jurisdiction

 ¶ 7 Ingleby's filing of his notice of appeal prior to the announcement of sentence prompts the State to argue that we are without jurisdiction because Ingleby's notice of appeal was untimely. In making this argument, the State asks us to overturn the jurisdictional aspect of *City of Saint George v. Smith*, 814 P.2d 1154 (Utah Ct.App.1991), *overruled on different grounds*, 828 P.2d 504 (Utah Ct.App.1992). "Those asking us to overturn prior precedent have a substantial burden of persuasion." *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994). "[O]nce a point of law is decided, that ruling should be followed by a court of the same or a lower rank in subsequent cases confronting the same legal issue." *State v. Shoulderblade*, 905 P.2d 289, 292 (Utah 1995). Nevertheless, we do not apply this doctrine mechanically or rigidly; instead, if we are convinced that there has been a change in the controlling authority, or that our prior decision was clearly erroneous, we will overturn the challenged holding. *See Menzies*, 889 P.2d at 399 n. 3 (stating "a panel may overturn its own or another panel's decision where the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable" (quotations and citation omitted)). Having examined the State's position, we are not convinced that overturning *Smith* is either necessary, or supported by the law.

¶ 8 In *Smith*, we addressed an argument similar to the State's in the instant case. There, the defendant's notice of appeal was filed after his conviction was entered but before his sentence was announced. *See* 814 P.2d at 1155. In considering whether this court had jurisdiction, we analyzed rule 4(c) of the Utah Rules of Appellate Procedure and determined that "[b]y using the disjunctive 'or,' [r]ule 4(c) clearly allows the notice of appeal to be filed after the *announcement* of either a decision, a judgment or an order," and that the word "decision" was to be

broadly construed. 814 P.2d at 1155 (emphasis added). We also determined that relating forward notices of appeal that were filed prior to the announcement of sentence was supported by sound policy rationale. *See id.; see also Nelson v. Stoker*, 669 P.2d 390, 392 (Utah 1983) ("The premature filing of the notice of appeal ... should not be regarded as a defect which will ipso facto entirely deprive the appellate court of jurisdiction. It is an irregularity which would be grounds for dismissal of the appeal within the discretion of the court." (quotations and citation omitted)). For those reasons, we concluded that "the trial court's determination of guilt qualifies as a 'decision' under [r]ule 4(c)" and that, in the absence of intervening motions, the notice would relate forward to the entry of sentence and vest this court with jurisdiction over the appeal. *Id.*

¶ 9 Contrary to the State's position in this case, *Smith* is supported by the plain language of rule 4(c). Rule 4(c) states: "Except as provided in paragraph (b) of this rule, a notice of appeal filed after the announcement of a decision, judgment, or order but before the entry of the judgment or order of the trial court shall be treated as filed after such entry and on the day thereof." Utah R.App. P. 4(c). Rule 4(b) allows that

> if a timely motion is filed in the trial court (1) for a new trial under [r]ule 24 of the Utah Rules of Criminal Procedure; or (2) to withdraw a plea under Utah code [section] 77–13–6, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying the motion to withdraw the plea.

Utah R.App. P. 4(b). In contrast to the State's position, the rule's plain language contemplates the filing of a notice of appeal prior to the announcement of sentence, as evidenced by the fact that a motion to withdraw a plea—one of the two motions noted to have substantive impact on rule 4(c)—must be made prior to the announcement of sentence. *See* Utah Code Ann. § 77–13–6(2)(b) (2003) ("A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is *announced*. Sentence may not be *announced* unless the motion is denied." (emphases added.)). Consequently, under our rules of procedure, a notice of appeal in a criminal case will be related forward following the "announcement of a decision, judgment, or order," so long as no motion for a new trial or to withdraw a plea is filed. Utah R.App. P. 4(b)-(c).

¶ 10 We conclude that *Smith's* jurisdictional aspect remains the controlling law in these circumstances. A notice of appeal filed after the announcement of a conviction, but prior to the announcement of sentence, will be related forward, so long as the defendant invokes neither motion referenced in rule 4(b). Ingleby's notice, having met this requirement, satisfies the rule; thus, we are vested with jurisdiction, and now address the substance of Ingleby's claim.[2]

## II. The Judge's Comment

¶ 11 Ingleby argues that the trial judge obstructed his right to a fair trial with a comment made to the jury in response to a question submitted during deliberations. However, assuming that the trial court's comment was improvidently made, any error that might be found is harmless.[3] " 'Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.' " *State v. Johnson*, 771 P.2d 1071, 1073 (Utah 1989) (quoting Utah Rule of Criminal Procedure 30(a)). Thus, "we will not reverse a conviction unless the error is substantial and prejudicial in the

---

**2.** However, we note that the notice of appeal is insufficient in the absence of the announcement and entry of a sentence in the case. *See State v. Walker*, 2002 UT App 290, ¶ 11, 55 P.3d 1165 ("[W]e hold that under Utah law a trial court must impose a sentence in order to create a final, appealable order.").

**3.** In concluding that the comment was harmless, we are not suggesting that the comment was proper. In suggesting that the jury's question focused on a "peripheral issue," the trial court risked having the jurors believe that he was commenting on the quality or importance of the evidence. *See State v. Larson*, 775 P.2d 415, 419 (Utah 1989). We encourage trial courts to resist the temptation to make such comments and instead suggest that the court use more neutral language to avoid any possible problems in the future.

sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant." *Id.; see also State v. Calliham*, 2002 UT 86,¶ 45, 55 P.3d 573 ("Notwithstanding error by the trial court, we will not reverse a conviction if we find that the error was harmless.").

¶ 12 Here, although the court described the juror's question as focused on "peripheral issues" we do not believe that this statement altered the trial's outcome. First, the State presented sufficient evidence to support the conviction. The arresting officer testified that when Ingleby was first detained, his speech was mumbled and he appeared nervous—because he avoided eye contact with the officer and was shaking far in excess of what the officer expected from the temperature. He further testified that Ingleby turned his back and repeatedly put his hands around or in his pockets, eventually moving his hands to his face to light a cigarette. Upon arresting Ingleby, the officer searched him—not including his mouth, coat sleeves, or boots—and placed him in the back of the patrol car after examining the area to ensure that it was empty.[4] During the drive to the jail, the officer felt Ingleby's feet moving under the driver's seat—leading the officer to believe that Ingleby was trying to hide something—and noticed a change in the clarity of Ingleby's voice when he spoke. Upon arriving at the jail, the officer assisted Ingleby out of the car, whereupon he noticed two small plastic baggies sitting on the floor where Ingleby's feet had rested. Further searching revealed two more baggies located on the floor under the driver's seat. When the officer picked up these bags he noticed that they were wet—presumably covered with saliva—and that each of the bags had teeth marks. The bags also had a small amount of tobacco on them, and at least one was compromised, allowing a small amount of fluid to leak into the bag. Testing revealed that the baggies contained methamphetamine.

¶ 13 Second, the court, in the jury instructions, clearly instructed the jury to disregard any statement that the court may have made that could be construed as favoring one side or the other. The jury was also instructed that it was the sole judge of the facts and that it was charged with deciding Ingleby's guilt based upon the evidence that had been presented. Finally, in discussing the question with the jury, the court allowed that "[i]f there is ... a member of the jury that really needs to know this, and thinks that they really need to know it before they can make up their mind for a verdict in the case" it would allow the reopening of the evidence to admit the requested information.[5] Understanding this, the jurors then withdrew the question. Under these circumstances, we are convinced that Ingelby's right to a fair trial was not compromised by the trial court's comment.

## CONCLUSION

¶ 14 Ingleby's notice of appeal, filed after the entry of his conviction but prior to the announcement of his sentence was timely under rule 4(c) of the Utah Rules of Appellate Procedure, and was properly related forward to the date that his sentence was entered. However, the trial court's comment, which is the subject of Ingleby's appeal, constitutes, at worst, harmless error.

¶ 15 Accordingly, we affirm Ingleby's conviction.

¶ 16 WE CONCUR: JAMES Z. DAVIS, Judge and NORMAN H. JACKSON, Judge.

---

4. The officer also testified that it was his practice to clean out the car's back seat every time he transported and removed a prisoner.

5. We voice no opinion of the propriety of reopening the case for the admission of additional evidence.