**2016 UT App 168**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOHN L. LEGG JR.,
Appellant.

Opinion
No. 20140716-CA
Filed August 4, 2016

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 101900677

Joanna E. Landau and Deborah Kreeck Mendez,
Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
GREGORY K. ORME and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

ROTH, Judge:

¶1    John L. Legg Jr. appeals the district court's determination
to revoke his probation. We dismiss the case as moot.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2     In August 2011, Legg pleaded guilty in two separate cases to one count of possession of a dangerous weapon by a restricted person and one count of aggravated assault with a deadly weapon, both third degree felonies. The district court sentenced Legg to concurrent prison terms of zero to five years on each count and suspended the prison terms in favor of probation. Legg's twenty-four-month probation was to be supervised by Adult Probation and Parole (AP&P), and the court required him to serve 180 days in jail as a condition of probation.

¶3     Legg was released from jail on January 5, 2012, and eight days later AP&P filed an affidavit with the district court, alleging several probation violations. At a subsequent hearing, the court found that Legg had committed three violations of his probation: (1) knowing possession of a controlled substance; (2) "fail[ing] to establish a residence of record"; and (3) failing to be "cooperative, compliant and truthful in all dealings with [AP&P]." The court revoked Legg's probation and committed him to prison to serve the sentences that had originally been suspended. Legg appealed the district court's decision.

¶4     On appeal, we affirmed the district court's determination regarding Legg's failure to be "cooperative, compliant, and truthful" in his dealings with AP&P but remanded the court's other two findings of probation violation for further consideration. *State v. Legg* (*Legg I*), 2014 UT App 80, ¶¶ 19, 21, 23, 25, 324 P.3d 656. With regard to the allegation that Legg had possessed a controlled substance, we concluded that "we [could not] determine from the record what evidence, if any, the trial court relied on in finding that Legg had knowledge of the narcotic character" of the substance found in his possession, and we remanded for the court "to identify the evidence it relied on and its reason for moving so quickly . . . to a finding of knowledge that the substance was cocaine." *Id.* ¶ 19. As to the allegation that Legg had failed to establish a residence of record,

we concluded that the district court's findings did not provide us with an adequate basis for review. *Id.* ¶ 23. Accordingly, because we were "not confident that, standing on its own, the single violation that we affirm[ed] would have resulted in a revocation of probation," we remanded "on the issues of possession of a controlled substance and failure to establish a residence of record for further consideration and explanation by the trial court." *Id.* ¶ 25. In particular, we stated that "[o]n remand, the trial court must reassess whether, under all the circumstances, Legg's probation should [still] be revoked." *Id.*

¶5     On remand, the State dropped its allegations of controlled substance and residence violations, choosing instead to move forward on the single violation of failure to be cooperative, compliant, and truthful with AP&P, which we had affirmed on appeal. The district court, through a judge who had succeeded the prior judge who conducted Legg's initial probation revocation hearing, then determined that the single violation was sufficient to justify revocation of Legg's probation. In reaching its decision, the district court concluded that our decision in *Legg I*, though in part a remand "for another evidentiary hearing . . . for findings as to whether or not there was a willful violation" of Legg's drug possession and residence requirements, also contemplated that the district court could determine whether the single "willful violation of probation"— the failure to be cooperative, compliant and truthful—"would . . . have been sufficient" to justify revocation of Legg's probation. In that regard, the district court found that "[t]here is no question that had [it] found a violation, looking at his history, looking at the [prosecution's sentencing] recommendation, looking at the opportunity for probation that he had received, [the court] would have imposed the original sentence." It concluded that the single probation violation affirmed on appeal "was properly a basis for revoking probation, looking at the entire history of both cases." Legg appeals this decision. During

the course of briefing on appeal, Legg was released from prison, having served his sentences.

## ISSUES ON APPEAL

¶6    Legg argues that the district court abused its discretion when it affirmed the decision to revoke his probation, because its decision did not follow the mandate of our decision in *Legg I*. "The mandate rule . . . binds both the district court and the parties to honor the mandate of the appellate court." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 28, 196 P.3d 588.

¶7    The State contends, however, that because Legg was released from prison on July 15, 2015, and has served the sentence that was reinstated when the district court revoked his probation, his case is moot. Before we reach the merits of Legg's appeal, we "must be satisfied that the issue[] raised [is] not moot." *Barnett v. Adams*, 2012 UT App 6, ¶ 4, 273 P.3d 378. "Where the issues that were before the trial court no longer exist, the appellate court will not review the case." *In re Adoption of L.O.*, 2012 UT 23, ¶ 8, 282 P.3d 977 (citation and internal quotation marks omitted). Because we conclude that Legg's case is moot, we dismiss this case without reaching the merits of his appeal.

## ANALYSIS

### I. Mootness and Its Exceptions

¶8    The State contends that Legg's appeal is moot because Legg has now served the prison sentences that were reinstated when his probation was revoked and the sentences have now expired.

¶9    Mootness is a jurisdictional issue. *See Carlton v. Brown*, 2014 UT 6, ¶¶ 29–30, 323 P.3d 571 (characterizing mootness as

one component of "justiciability," and stating that "[i]n the absence of any justiciable controversy between adverse parties, the courts are without jurisdiction" (alteration in original) (citation and internal quotation marks omitted)). "The burden of persuading the court that an issue is moot lies with the party asserting mootness." *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 21, 234 P.3d 1105 (citation and internal quotation marks omitted). "An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants," *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (citation and internal quotation marks omitted), or, in other words, when the requested relief appears to be "impossible or of no legal effect," *State v. McClellan*, 2014 UT App 271, ¶ 3, 339 P.3d 942 (citation and internal quotation marks omitted). And appellate "[c]ourts generally will not resolve an issue that becomes moot" while the appeal is pending, where "circumstances change so that the controversy is eliminated." *State v. Black*, 2015 UT 54, ¶ 10, 355 P.3d 981 (citation and internal quotation marks omitted). Thus, if it is demonstrated that a case is moot, it "must be dismissed . . . unless it can be shown to fit within a recognized exception to the mootness principle." *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981).

¶10    Here, the State has met its initial burden to show that Legg's case is moot. Legg has requested relief from the revocation of his probation and the resulting reinstatement of his suspended prison sentences, and the State has shown that he has now been released from prison and his sentences have been served. As a consequence, providing Legg with relief from his probation revocation would be "of no legal effect." *See Black*, 2015 UT 54, ¶ 10 (citation and internal quotation marks omitted). As the State points out, "[a] new revocation hearing will not allow the district court to reinstate his probation and give him another opportunity to avoid the prison term ordered as a result of his probation revocation." Thus, in order for Legg's appeal to

survive dismissal, his case must fit within a recognized exception to mootness.

## A.     Exceptions to Mootness

¶11     The recognized exceptions to mootness in Utah involve cases that affect public interest, are likely to recur, and are capable of evading review, *see Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶ 32, 289 P.3d 582, and in the criminal realm, cases in which "'collateral legal consequences[2] will be imposed on the basis of the challenged conviction,'" *Duran*, 635 P.2d at 45 (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

¶12     The parties disagree over whether the collateral consequences exception applies. The State argues that Legg's appeal does not fall within the collateral consequences exception and that we must dismiss. In particular, the State argues that "under both Utah and federal law, the courts presume that a *conviction* will result in . . . negative collateral legal consequences" but that courts do not presume "that a challenge to a parole revocation or any other sentence (such as probation) will result in negative collateral legal consequences." (Emphasis in original.) The State contends that our precedent has distinguished between those collateral consequences that are imposed as a matter of law and those that merely come about through discretionary decisions by others, such as future courts and employers, and that while convictions carry actual legal consequences, probation revocations do not necessarily do so,

2. While the collateral consequences exception is usually applied in criminal cases, it has also been applied (albeit, more rarely) in civil cases. *See, e.g.*, *Towner v. Ridgway*, 2012 UT App 35, ¶¶ 7–11, 272 P.3d 765 (applying the collateral consequences doctrine to dismiss as moot a challenge to an expired civil stalking injunction).

apart from the specific consequences imposed by the revoking court. As a result, the State asserts that "when a Defendant challenges his sentence or probation or parole revocation, the case will be moot if his sentence has expired unless the Defendant can show a concrete injury-in-fact." And in this case, the State contends that we must dismiss because we cannot presume that Legg will suffer collateral legal consequences from his probation revocation and Legg has not otherwise demonstrated that he has suffered, or will suffer, a concrete injury-in-fact if the probation revocation stands.

¶13 In this regard, the State argues that two of our recent decisions involving probation revocation challenges and collateral consequences—*State v. Allen*, 2015 UT App 163, 353 P.3d 1266, and *State v. Warner*, 2015 UT App 81, 347 P.3d 846—should not govern our decision in the present case because they are "anomalous" and controvert established Utah and federal case law. The appellants in *Allen* and *Warner* each challenged the validity of his probation revocation, not his underlying conviction, but by the time their cases were submitted on appeal, each appellant had served his respective jail sentence and been released. *See Allen*, 2015 UT App 163, ¶¶ 1, 4; *Warner*, 2015 UT App 81, ¶ 1. Thus, both cases seemed to request relief—reversal of their respective probation revocations and, hence, of their jail sentences—that would be "of no legal effect." *See Black*, 2015 UT 54, ¶ 10 (citation and internal quotation marks omitted). Consequently, both cases seemed to present moot controversies on appeal that would require the demonstration of an applicable mootness exception to avoid dismissal; indeed, in both cases, the State argued that the controversies were moot and that the cases should be dismissed. However, in both cases, rather than dismiss, we concluded that each defendant would suffer collateral legal consequences from his probation revocation and proceeded to decide each case on its merits.

¶14 Prior to these two cases, it does not appear that we considered the question of whether we may presume collateral consequences in the exact context of a probation revocation challenge. Nonetheless, the State argues that we "misread relevant precedent" when we rejected the mootness arguments in each case and, as a consequence, failed to appropriately take into account the major qualitative difference that prior case law had recognized between the collateral consequences resulting from a criminal conviction and those resulting from a probation revocation—namely, that while convictions "almost always result[] in legally-imposed collateral consequences," probation revocations do not. Consequently, the State urges that we "apply the collateral legal consequences exception as set forth in Utah Supreme Court case law and in this Court's own pre-2015 case law, not as set forth in *Warner* and *Allen*."

¶15 In contrast, Legg contends that his case does fall within the collateral consequences exception and is not moot. He asserts that he faces "very real" collateral consequences because the probation revocation constitutes a "blemish" on his record that could affect the disposition of any "future difficulties with the law" that he may encounter and that even without the "real consequences" he asserts, mootness is "a matter of judicial policy" and we should address his claim to "eliminate the source of a potential legal liability." He also asserts that *Allen* and *Warner* were correctly decided and that, in any event, the State "has not carried its burden to show why either case should be overruled."

¶16 We agree with the State that *Allen* and *Warner* depart from the path of prior precedent and conclude that Legg's case does not fit within a recognized exception to mootness. In so doing, we necessarily conclude that the mootness holdings in *Allen* and *Warner*, that suggest collateral legal consequences may be presumed in the context of probation revocation decisions, were erroneously decided. Thus, we first address the collateral

consequences exception, and we then address the continuing viability of *Allen* and *Warner* and whether to dismiss this case.

1.    The Law Regarding the Collateral Consequences Exception

¶17    In its simplest form, the collateral consequences exception permits an appeal to survive dismissal on mootness grounds if, notwithstanding the fact that the direct and immediate consequences of a lower court decision have already occurred and cannot be directly remedied by an appellate decision, there are adverse "collateral legal consequences [that] will be imposed on the basis of the challenged" issue on appeal. *See Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981) (citation and internal quotation marks omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998) (stating that, to survive a mootness dismissal, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained"); *In re Giles*, 657 P.2d 285, 286 (Utah 1982) ("Where collateral legal consequences may result from an adverse decision, courts have generally held an issue not moot and rendered a decision on the merits."); *Towner v. Ridgway*, 2012 UT App 35, ¶ 6, 272 P.3d 765 (same, in the context of a civil stalking injunction).

¶18    Generally, once mootness has been demonstrated, the party seeking to survive dismissal bears the burden of demonstrating that collateral legal consequences will flow from the challenged issue. In other words, under most circumstances, we will not presume that collateral consequences exist. *See Barnett v. Adams*, 2012 UT App 6, ¶ 9, 273 P.3d 378 ("When a party has not shown the existence of actual, adverse, collateral consequences[,] . . . we will not presume that such collateral consequences exist." (alteration and omission in original) (citation and internal quotation marks omitted)); *see also State v. Hooker*, 2013 UT App 91, ¶ 3, 300 P.3d 1292 (dismissing appeal from a probation revocation where the appellant "has not

alleged, much less demonstrated, that any such exception is applicable"); *State v. Peterson*, 2012 UT App 363, ¶ 3, 293 P.3d 1103 (dismissing an appellant's challenge to his sentence after he had been released from jail where, among other things, he "advances no argument that the appeal is not moot").

¶19 But not every asserted collateral consequence will prevent dismissal. Utah precedent, as well as precedent of the Supreme Court of the United States, has established that the demonstrated consequences must be actual and adverse, not speculative or hypothetical, for the case to fit within this exception. *See Towner*, 2012 UT App 35, ¶¶ 7–9 (concluding that the case was moot where the appellant pointed "to no actual, adverse legal consequences of denying his motion to vacate the underlying proceeding"); *Barnett*, 2012 UT App 6, ¶ 8 ("[A] litigant must show that the collateral consequences complained of are not merely hypothetical or possible but that they are probable and represent actual and adverse consequences." (citations omitted)). In this regard, we have repeatedly dismissed cases as moot where the appellant was unable to show that the asserted consequences would be "imposed by law." *See State v. McClellan*, 2014 UT App 271, ¶ 5, 339 P.3d 942 (dismissing case as moot where appellant's asserted consequences of "prevent[ing] him from improv[ing] his living situation and support network in the community and from [being] a better father to his children" did "not qualify as collateral legal consequences" where they were "not imposed by law" (second alteration in original) (internal quotation marks omitted)); *Towner*, 2012 UT App 35, ¶ 9 (dismissing appeal as moot where appellant asserted only potential consequences, such as "harm to his reputation, family relationships, and employment prospects" that "are not 'imposed by law'" and did "not identify any legal harms" he would suffer if the expired injunction against him was not vacated (citation omitted)); *State v. Moore*, 2009 UT App 128, ¶ 17, 210 P.3d 967 (determining that appellant had not shown that he would suffer "actual, adverse collateral consequences"

from his disciplinary segregation in prison where "Utah law provides no requirement that the parole board deny parole because of a prison disciplinary record"); *see also Spencer*, 523 U.S. at 14–16 (noting that the petitioner had failed to demonstrate that the "concrete injuries-in-fact" he asserted would follow from the revocation of his parole were more than speculative where it was unclear whether any legal consequence would follow). And an appellant cannot prevent dismissal by "simply list[ing] potential legal impairments that generally impact a person" in the same or similar situations. *See Barnett*, 2012 UT App 6, ¶ 9. Rather, the consequences must be actual, adverse consequences specifically applicable to the appellant. *See id.* (concluding that the appellant had alleged collateral consequences that were "merely speculative" where she did not assert "injuries that she has actually suffered or [would] even likely suffer" in the future); *Moore*, 2009 UT App 128, ¶¶ 13–14 (noting that the administrative action against defendant "entailed no collateral legal consequences of the kind that result from a criminal conviction" where, for example, the decision "to place [the defendant] in solitary confinement will have no bearing on his ability to vote, engage in certain businesses, or serve on a jury" and where failure to expunge the disciplinary action could have only a "hypothetical impact . . . on a future parole hearing" he may have (citations and internal quotation marks omitted)).

¶20 Along these lines, we have also followed the reasoning of the Supreme Court of the United States in dismissing cases as moot where the asserted collateral consequences are dependent on the discretion of potential future decision makers, such as whether the challenged action will affect a future case, employment prospects, or the appellant's reputation. *See McClellan*, 2014 UT App 271, ¶ 5 (dismissing case as moot where the asserted consequences related to the appellant's ability to improve his "living situation and support network in the community," and citing *Spencer*, 523 U.S. at 16 note 8, for the

proposition that "an injury to reputation or stigma resulting from a criminal conviction is not adequate alone to overcome mootness"); *Moore*, 2009 UT App 128, ¶ 14 ("[T]he hypothetical impact of the disciplinary record on a future parole hearing does not create a collateral legal consequence that prevents the conclusion that Moore's claim is moot."). Indeed, in *Spencer*, the Supreme Court dismissed a challenge to a parole revocation in part because

> [t]he parole violations that remain a part of respondents' records cannot affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole. Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring. In addition, we rejected as collateral consequences sufficient to keep the controversy alive the possibility that the parole revocations would affect the individuals' employment prospects, or the sentence imposed [upon them] in a future criminal proceeding. These nonstatutory consequences were dependent upon [t]he discretionary decisions . . . made by an employer or a sentencing judge, which are not governed by the mere presence or absence of a recorded violation of parole, but can take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation.

523 U.S. at 13 (alterations in original) (citations and internal quotation marks omitted). The Court had earlier expressed a similar concern in *Lane v. Williams*, 455 U.S. 624 (1982). There, the defendants challenged the parole components of their completed sentences, not their convictions, based on the failure of the trial courts to inform them before accepting their guilty pleas that

their "negotiated sentence[s] included a mandatory parole term." *Id.* at 626, 630. The Supreme Court held that the defendants had failed to demonstrate the kind of concrete collateral "civil disabilities" necessary to avoid dismissal for mootness, such as the inability to vote in an election or engage in certain businesses. *Id.* at 632–34. Rather, the defendants faced "[a]t most, certain non-statutory consequences," such as potential negative effects on future "discretionary decisions" related to "employment prospects" or a "sentence imposed in a future criminal proceeding," that "are more directly influenced by[] the underlying conduct that formed the basis for the parole violation" than the fact of the parole violation itself, *id.* at 632–33.

¶21 However, while we ordinarily will not presume the existence of collateral consequences where the direct consequences of a judicial decision have already played themselves out, we have consistently held that collateral consequences will be presumed in the narrow context of challenges to a criminal *conviction*. That is, where an appellant's challenge to his underlying conviction is otherwise moot because his sentence has been served or his probation completed, we will presume that his case fits within the exception. This is because convictions nearly always carry continuing consequences that are imposed as a matter of either state or federal law, such as limits on a person's ability to vote, "engage in certain businesses, or serve on a jury." *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981); *see also Spencer*, 523 U.S. at 12 ("In the context of [a] criminal conviction, the presumption of significant collateral consequences is likely to comport with reality . . . . [I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'" (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968))); *North Carolina v. Rice*, 404 U.S. 244, 247 & n.1 (1971) (noting the disabilities that various states "may attach to a convicted defendant even after he has left prison," which may include being "disenfranchised," "los[ing] the right to hold federal or state office," "be[ing] barred from

entering certain professions," "be[ing] subject to impeachment when testifying as a witness," and "be[ing] disqualified from serving as a juror"); *Sibron*, 392 U.S. at 55–56 (noting that New York law "expressly provides by statute that [a defendant's] conviction may be used to impeach his character should he choose to put it in issue at any future criminal trial, . . . and that it must be submitted to a trial judge for his consideration in sentencing" (citation omitted)).

¶22    Indeed, in *Duran v. Morris*, 635 P.2d 43 (Utah 1981), the oft-quoted Utah collateral consequences case, our supreme court adopted and applied the mootness holding from *Sibron v. New York*, 392 U.S. 40 (1968), stating that "it is now clearly established that 'a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Duran*, 635 P.2d at 45 (quoting *Sibron*, 392 U.S. at 57). In *Duran*, a prison inmate petitioned for a writ of habeas corpus, alleging that "prison officials violated his constitutional rights by temporarily placing him in administrative segregation." *Id.* at 44. Because the appellant was not challenging his criminal conviction, however, the court dismissed the case as moot. *Id.* at 46. The petitioner had been released from administrative segregation during the course of the appeal, and the court determined, based on *Sibron*'s reasoning, that "[i]ntraprison administrative decisions . . . entail no collateral legal consequences of the kind that result from a criminal conviction." *Id.* at 45. We have since applied the holding of *Duran* to dismiss similarly postured criminal cases as moot. *See, e.g.*, *Hooker*, 2013 UT App 91, ¶ 3 (dismissing appellant's challenge to his probation revocation and the reinstatement of his jail sentence which had already been served); *Peterson*, 2012 UT App 363, ¶ 5 (dismissing appellant's challenge to the legality of his completed jail sentence); *Moore*, 2009 UT App 128, ¶¶ 6, 9–14 (dismissing appellant's challenge to his temporary administrative segregation in jail); *State v. Martinez*, 925 P.2d 176, 177 (Utah Ct. App. 1996) (dismissing appellant's request to be

resentenced, even though she had been unrepresented at a hearing prior to sentencing, where she had "already completed the 60-day evaluation [that had been] ordered by the court" at that hearing and where she "had an opportunity to be represented by counsel at the . . . sentencing hearing").

¶23   Thus, when a party challenges the validity of his *conviction* in an otherwise moot appeal, unless the party seeking dismissal shows that "there is *no possibility* that any collateral legal consequences will be imposed," *Duran*, 635 P.2d at 45 (emphasis added) (citation and internal quotation marks omitted), we retain jurisdiction to consider the appellant's appeal on its merits. But where decisions from other kinds of proceedings are challenged, there is no such presumption; rather the burden is on the opponent of dismissal to demonstrate that actual, non-speculative consequences will flow from the decision despite the direct consequences having already played out. *See, e.g.*, *Moore*, 2009 UT App 128, ¶ 17 (dismissing appeal of temporary administrative segregation in jail as moot where the defendant had "shown no actual, adverse, collateral consequences that have arisen from the failure to expunge his administrative record"). This is because the nature of the *consequences* flowing from a particular result or decision in a proceeding determines whether a case fits within the collateral consequences exception.

¶24   Viewed in this light, we presume that there will be legally cognizable collateral effects only in the context of criminal convictions or the equivalent. There are inescapable, long-term, legally-imposed consequences that will follow "a convicted defendant even after he has [served his sentence and] left prison." *See Rice*, 404 U.S. at 247. In contrast, while a probation revocation may attract immediate consequences (such as the reinstatement of a prison sentence), it generally does not result in concrete, ongoing legal disabilities or barriers to certain rights or activities beyond that. Rather, the consequences that may

follow, such as the revocation being used as a factor in any future plea negotiation or sentencing decision or even an employment decision, are often wholly contingent upon the future decisions of the defendant himself and the discretion of a particular decision-maker. *See Spencer v. Kemna*, 523 U.S. 1, 13 (1998). In other words, the continuing legal effect of something like a probation revocation is in no way certain or even probable. At most, the effects are legally inchoate and dependent on future circumstances that may or may not arise. *Cf. Sibron*, 392 U.S. at 57–58 (suggesting that it is the judgment of conviction, not the satisfied sentence itself, which survives). Consequently, in contexts other than a criminal conviction, it makes sense that we require the appellant seeking relief to demonstrate the existence of actual, adverse collateral legal consequences in order to avoid dismissal when a case has otherwise become moot.

¶25    In sum, it is evident that our cases before *Allen* and *Warner* had established three principles pertinent to the case before us. First, mootness does not provide the court with a choice of whether to proceed with an appeal or not; it is jurisdictional. *See Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶ 24, 289 P.3d 582 (explaining that mootness is jurisdictional and directly "parallel" to the prohibition against issuing advisory opinions that are merely academic in nature). Second, to overcome the jurisdictional bar, the party seeking relief must demonstrate that a recognized exception applies. *See, e.g.*, *State v. Hooker*, 2013 UT App 91, ¶ 3, 300 P.3d 1292 (dismissing appeal from a probation revocation where the appellant "has not alleged, much less demonstrated, that any [mootness] exception is applicable"). Third, if the party relies on the collateral consequences exception, we will not presume that there are actual and adverse collateral consequences *unless* the party is challenging the validity of his or her criminal conviction. *See, e.g.*, *State v. Peterson*, 2012 UT App 363, ¶¶ 3–5, 293 P.3d 1103 (explaining that an appellant "does not have a right to an advisory opinion"

and that because the appellant "does not challenge his conviction . . . the collateral consequences attendant to an unlawful conviction are not at issue"); *Towner v. Ridgway*, 2012 UT App 35, ¶ 7, 272 P.3d 765 ("Unless a party is challenging a criminal conviction, we will not presume that such collateral consequences exist." (citation and internal quotation marks omitted)). Seen against this backdrop, the holdings of *Allen* and *Warner* indeed are anomalous.

## II. The Mootness Analyses of *Allen* and *Warner*

¶26     Generally, as a matter of "horizontal stare decisis, the first decision by a court on a particular question of law governs later decisions by the same court." *State v. Tenorio*, 2007 UT App 92, ¶ 9, 156 P.3d 854 (citation and internal quotation marks omitted); *see also State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) (stating that a court "will follow the rule of law which it has established in earlier cases" (citation and internal quotation marks omitted)). This is so because stare decisis is "crucial to the predictability of the law and the fairness of adjudication." *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993). As a consequence, "once a point of law has been decided, we will not overturn it lightly." *Kuhn v. Retirement Board*, 2015 UT App 18, ¶ 15, 343 P.3d 316. Rather, to overturn our own precedent, we must be "convinced that there has been a change in the controlling authority, or that our prior decision was clearly erroneous." *State v. Ingleby*, 2004 UT App 447, ¶ 7, 104 P.3d 657 (citing *Menzies*, 889 P.2d at 399 n.3); *see also Menzies*, 889 P.2d at 399 (stating that a court may "overrule prior precedent" only if it becomes "clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent" (citation and internal quotation marks omitted)).

¶27     In this regard, our supreme court has recently noted that "our presumption against overruling precedent is not equally strong in all cases." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345

P.3d 553 (citing *Menzies*, 889 P.2d at 399). The court identified "two broad factors that distinguish between weighty precedents and less weighty ones: (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Id.* It also noted that "[t]he second factor encompasses a variety of considerations, including the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned." *Id.* Based on an analysis of these factors, we are compelled to conclude that *Allen* and *Warner* ought not to govern our decision in this case.

A.     The Authority and Reasoning of *Allen* and *Warner*

¶28    As discussed above, although we had not considered the precise question of whether collateral consequences could be presumed in the specific context of a probation revocation challenge before we decided *Allen* and *Warner*, we had repeatedly declined to presume collateral consequences in similarly-postured cases where the challenge was to some result or decision other than a conviction. *See supra* ¶¶ 19–25. The Utah Supreme Court had similarly declined to presume collateral consequences in a context other than a challenge to a conviction. *See, e.g.*, *In re C.D.*, 2010 UT 66, ¶¶ 17–18, 245 P.3d 724 (dismissing a challenge to custody determinations as moot where the issue did not fit into the public interest mootness exception, and where "neither party ha[d] presented any evidence that the lower court's decisions . . . will have any collateral legal consequences on the parties"); *Cullimore v. Schwendiman*, 652 P.2d 915, 916 (Utah 1982) (dismissing a challenge to a driver license revocation as moot where the revocation time period had passed and the court had "not been made aware of any collateral legal consequences" (citation and internal quotation marks omitted)); *Duran v. Morris*, 635 P.2d 43,

45–46 (Utah 1981) (dismissing challenge to administrative segregation decision). And the Supreme Court of the United States has declined to presume collateral consequences in similar contexts as well. *See, e.g.*, *Spencer*, 523 U.S. at 8–16 (declining to presume collateral consequences in a parole revocation challenge); *Lane v. Williams*, 455 U.S. 624, 631–34 (1982) (declining to presume collateral consequences in the context of challenges to petitioners' sentences, not underlying convictions).

¶29    In *Allen* and *Warner*, however, neither appellant challenged his underlying conviction; instead both challenged the legality of their probation revocations and resulting incarcerations. Both defendants had been released from jail, having served their sentences, by the time their appeals were submitted for decision. Thus, both cases presented classic iterations of mootness that would seem to require the affirmative demonstration of a mootness exception to avoid dismissal. Nevertheless, we appear to have simply presumed the existence of collateral legal consequences and proceeded to consider the merits of each case.

1.    *State v. Allen*

¶30    In *Allen*, the defendant pleaded guilty and was placed on probation. However, the defendant's probation was revoked for failure to comply with probation conditions. *State v. Allen*, 2015 UT App 163, ¶¶ 2–4, 353 P.3d 1266. As a sanction, the district court imposed a jail sentence and terminated probation as unsuccessful. *Id.* ¶ 4. On appeal, the defendant challenged the district court's decision to revoke his probation, claiming ineffective assistance of counsel. *Id.* ¶ 1. But by the time his appeal was heard, he had served his jail sentence completely and had been released. *Id.* ¶ 4.

¶31    We resolved the issue of mootness in a footnote. We noted that despite the State's arguments, the defendant contended that "his appeal [was] not moot because his *conviction* still affect[ed]

his rights" despite the fact that the conviction itself was not the decision the defendant appealed. *Id.* ¶ 4 n.2 (emphasis added). We then simply quoted *Barnett* and *Duran* for the general proposition that collateral legal consequences, particularly those related to a criminal case in which the conviction creates continuing legal consequences, permits us to find an "issue not moot and render[] a decision on the merits." *Id.* (citation and internal quotation marks omitted). In this respect, our reasoning seemed to conflate the consequences of Allen's probation violations with those stemming from his conviction in order to reach the conclusion that his case was not moot: "We are not convinced that Allen faces no collateral legal consequences *as a result of his felony conviction and revoked probation terms*." *Id.* (emphasis added). But the defendant did not appeal his conviction, only the revocation of his probation and the resulting incarceration pursuant to his original sentence. *See id.* ¶ 1 ("Allen appeals his sentence . . . .").

¶32 Further, we did not analyze any secondary consequences that the defendant contended he may have faced as a result of the probation revocation.[3] Rather, it appears that we simply presumed such consequences would ensue. In this regard, we

---

3. We note that the terms of Allen's plea agreement included an agreement by the State that it would recommend reduction of Allen's felony conviction to a misdemeanor conviction upon successful completion of his probation. *State v. Allen*, 2015 UT App 163, ¶ 2, 353 P.3d 1266. But although we noted that Allen asserted that "his appeal [was] not moot because his conviction still affects his rights," *id.* ¶ 4 n.2, we did not address whether the loss of the State's recommendation amounted to a legally cognizable collateral consequence. Instead, we seemed to presume without explanation that the loss of the promised recommendation was a collateral consequence. We express no opinion on that question here.

made no attempt to differentiate between those continuing legal consequences he may have suffered as a result of his probation revocation (the subject of his appeal) and those he may have been subject to as a result of his underlying conviction (not the subject of his appeal). *Cf. Sibron v. New York*, 392 U.S. 40, 58 (1968) (noting that the appellant "has a substantial stake in the judgment of conviction *which survives the satisfaction of the sentence imposed on him*" (emphasis added) (citation and internal quotation marks omitted)). As a result, we failed to limit our mootness inquiry to the actual controversy and the relief that was requested on appeal—relief from the defendant's revoked probation, not his underlying conviction.

2.    *State v. Warner*

¶33    In *Warner*, we dealt more directly with the nature of the consequences that an appellant must show in order to trigger a mootness exception. The trial court had suspended the defendant's jail sentences in two consolidated domestic violence cases and placed him on probation. *State v. Warner*, 2015 UT App 81, ¶¶ 1, 5–7, 347 P.3d 846. At a subsequent order to show cause hearing, the trial court revoked the defendant's probation and reinstated his original jail sentences. *Id.* The defendant appealed, but just as in *Allen*, by the time his appeal was submitted, he had completed his sentences and been released from jail. *Id.* ¶ 1.

¶34    As in *Allen*, the State contended that Warner's challenge was moot because he had served the reinstated jail sentences. *Id.* The State argued that the collateral consequences Warner could suffer as a result of his revoked probation were "merely hypothetical or possible," rather than actual, arguing implicitly that collateral consequences could not be presumed. *Id.* ¶ 3. However, we reasoned that the State's "argument [was] based on the standard applicable to civil cases, not criminal cases," and we "decline[d] to extend the civil approach to collateral consequences to this criminal appeal." *Id.* We also pointed out that "the potentially hypothetical nature of the collateral

consequences facing a criminal defendant has not prevented Utah courts from reaching the merits of an otherwise-moot criminal appeal." *Id.* We then concluded in a single sentence, as we did in *Allen*, "[W]e are not convinced that Warner faces no possible collateral consequences as a result of his revoked probation terms," and we suggested that mootness is merely "'a matter of judicial policy'" that "'technically . . . rests in the discretion of this court.'" *Id.* (quoting *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233). We then proceeded to "reach the issues underlying Warner's appeal." *Id.*

a.      Collateral Consequences in *Warner*

¶35    As with *Allen*, our mootness holding in *Warner* seems unpersuasive. First, even though the defendant challenged his probation revocation, not his underlying conviction, we simply stated that we were "not convinced" that no collateral consequences would attach to the defendant's probation revocation, without providing any analysis of specific adverse consequences that the defendant himself might suffer. Indeed, it is unclear from the decision what legal consequences, if any, the defendant claimed he would suffer if the merits of his appeal were not addressed. Instead, the only collateral consequences referenced in the decision were noted in passing and, significantly, were identified as "the effects [of] a conviction," not a probation revocation. *Id.* ¶ 2 ("In criminal cases, collateral legal consequences include the effects *a conviction* has on 'the petitioner's []ability to vote, engage in certain businesses, or serve on a jury. . . .'" (alteration in original) (emphasis added) (quoting *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981))). Thus, our analysis seemed to presume that the defendant would face collateral consequences "as a result of his revoked probation terms," without making an attempt to identify, analyze, or resolve the qualitative divide between the potential consequences of the defendant's revoked probation and those typical of a criminal conviction. In other words, the *Warner*

decision failed to explain why it equated the legal consequences of a criminal conviction with those of a probation revocation.

¶36    This analytical approach is of particular concern because every Utah case cited in *Warner* regarding collateral consequences suggests that only in the context of criminal *convictions* may collateral consequences be presumed. *See Warner*, 2015 UT App 81, ¶¶ 2–3 (citing *In re Giles*, 657 P.2d 285 (Utah 1982); *Duran*, 635 P.2d 43; *Towner v. Ridgway*, 2012 UT App 35, 272 P.3d 765; *Barnett v. Adams*, 2012 UT App 6, 273 P.3d 378; *Gardiner v. York*, 2010 UT App 108, 233 P.3d 500; *State v. C.H.*, 2008 UT App 404U). For example, the case *Warner* relies on to suggest that there is a separate "civil standard" for collateral consequences in the mootness context expressly states that collateral legal consequences may be presumed only in the context of a challenge to a criminal conviction. *See Towner*, 2012 UT App 35, ¶ 7 ("Unless a party is challenging a criminal conviction, we will not presume that such collateral consequences exist." (citation and internal quotation marks omitted)). Further, our statement that "the potentially hypothetical nature of the collateral consequences facing a criminal defendant has not prevented Utah courts from reaching the merits of an otherwise-moot criminal appeal" is supported by two cases involving convictions. *See Warner*, 2015 UT App 81, ¶ 3 (citing *In re Giles*, 657 P.2d at 287; *C.H.*, 2008 UT App 404U, para. 2). In *In re Giles*, for example, the supreme court applied a mootness exception by likening the appellant's involuntary commitment to a mental institution to a conviction. 657 P.2d at 286–87 ("The doctrine of collateral legal consequences is chiefly applied in criminal cases . . . . However, the doctrine is equally applicable to patients of mental hospitals who face similar deprivations of liberty and whose commitment and hospitalization must stand scrutiny on the merits when challenged." (citations omitted)). And in *State v. C.H.*, a mother was appealing a criminal contempt ruling. 2008 UT App 404U, para. 2 ("[W]here Mother is still a resident of Utah, a record that

includes *her conviction of criminal contempt* may negatively impact future decisions of DCFS with respect to Mother's rights to parent her children. Thus, we hold that the issues raised by Mother are not moot." (emphasis added)).

¶37    Finally, the Utah case *Warner* primarily relied on for the principle that collateral consequences could be presumed from Warner's probation revocations, *Duran*, states that we will dismiss a criminal appeal as moot only if there is no possibility of collateral legal consequences being imposed "on the basis of the challenged *conviction.*" *See Warner*, 2015 UT App 81, ¶¶ 2–3 (emphasis added) (internal quotation marks omitted) (citing *Duran*, 635 P.2d at 45). *Duran* then declined to presume collateral consequences arising from an administrative segregation in jail that had ended. The other cases we cited in *Warner* to support the presumption of collateral consequences from a probation revocation are from other jurisdictions. But these few cases demonstrate no discernible pattern among other jurisdictions and weigh little against the long and uninterrupted line of Utah cases holding that collateral legal consequences are to be presumed only in the context of a moot challenge to a conviction and that for any other challenge, the party seeking to survive dismissal must demonstrate the existence of actual, adverse legal consequences.[4] *See supra* ¶¶ 19–25.

---

4. We also note that much of the reasoning leading to our conclusion that Warner would suffer collateral legal consequences from his probation revocation was premised on a distinction between the application of the collateral consequences standard in civil cases as opposed to criminal cases. But we have found no case—civil or criminal—that differentiates between a "civil" and a "criminal" standard for presuming collateral consequences; indeed, even the case cited in *Warner* to support the proposition, *Towner v. Ridgway*, 2012 UT

(continued…)

b.      Mootness in *Warner*

¶38    *Warner*'s suggestion that mootness is discretionary and a matter of "judicial policy" also seems to be a departure from precedent, given recent Utah Supreme Court statements on the subject. *See State v. Warner*, 2015 UT App 81, ¶ 3, 347 P.3d 846 (citing *Sibron v. New York*, 392 U.S. 40 (1968), and *Ellis v. Swensen*, 2000 UT 101, 16 P.3d 1233, as suggesting that we may "entertain[] moot controversies," particularly where "mootness is a matter of judicial policy . . . [that] rests in the discretion of this court" (first alteration in original) (citation and internal quotation marks omitted)). Our supreme court has unequivocally held that mootness, like standing, is not discretionary. *Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶ 18, 289 P.3d 582 ("This [mootness] doctrine is an element of the principles defining the scope of the 'judicial power' vested in the courts by the Utah Constitution. It is not a simple matter of judicial convenience or ascetic act of

---

(…continued)
App 35, 272 P.3d 765, expressly adopts a universal standard for proof of collateral consequences. In *Towner*, we dismissed as moot an appeal from an expired civil stalking injunction. 2012 UT App 35, ¶ 11. In so doing, we applied the collateral consequences exception even though "[t]he doctrine of collateral legal consequences is chiefly applied in criminal cases." *Id.* ¶ 7 (citation and internal quotation marks omitted). And we went on to acknowledge that the only situation in which collateral consequences may be presumed is when "a party is challenging a criminal conviction" and that in all other cases "a litigant must show that the collateral consequences complained of are not merely hypothetical or possible but that they are probable and represent actual and adverse consequences." *Id.* (citations and internal quotation marks omitted).

discretion.").[5] On the contrary, our supreme court has held that the mootness doctrine directly implicates our constitutionally vested "judicial power," and "when a court ascertain[s] that there is no jurisdiction in the court because of the absence of a justiciable controversy, then the court can go no further, and its immediate duty is to dismiss the action." *Id.* ¶¶ 18–19 (alteration in original) (citation and internal quotation marks omitted); *accord State v. Steed*, 2015 UT 76, ¶ 6, 357 P.3d 547. Simply put, a court does not have jurisdiction to consider a moot case, unless some recognized exception is established by the party seeking to avoid dismissal. *Local 382*, 2012 UT 75, ¶¶ 17–28. And as discussed above, once mootness has been shown, the burden to demonstrate that an exception applies falls on the party seeking to avoid dismissal, except in the case of a challenge to a criminal conviction where adverse collateral consequences are readily presumed.

¶39    In this regard, by the time *Warner* reached our court, the controversy presented for resolution—the challenge to the legality of Warner's probation revocation and consequent imposition of his suspended sentences—had, as a practical matter, been resolved because he had already been released from jail. Thus, granting Warner his requested relief of reversing his probation revocations could not have addressed or resolved the direct legal consequence of the district court's revocation

---

5. We note that in *Utah Transit Authority v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, 289 P.3d 582, the Utah Supreme Court characterized the language in prior decisions, such as *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233, that suggested mootness was a discretionary matter of "judicial policy" as dicta. The "discretion and policy at stake . . . are not a matter for standardless, case-by-case resolution, but instead are informed by the doctrine of mootness and its exceptions." *Local 382*, 2012 UT 75, ¶ 19 n.3.

decision—i.e., his incarceration. Yet our analysis in *Warner* seems to treat the mootness doctrine not as the jurisdictional fence that it is, but instead as simply another discretionary consideration that the judiciary may or may not employ to resolve a particular appeal. But this is precisely how our supreme court has declared the doctrine may not be treated. *See id.*

¶40　In sum, *Allen* and *Warner* failed to analyze and apply the collateral consequences exception to the mootness doctrine according to precedent. Both cases seem to have presumed the existence of collateral consequences related to the probation revocation challenges without analyzing whether or why that presumption was appropriate, given our precedent. Indeed, neither case acknowledged the distinction prior cases have made between collateral consequences in the context of convictions and in all other mootness challenges.

B.　The Establishment of the Mootness Holdings in *Allen* and *Warner*

¶41　We also conclude that neither case is firmly established. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 22, 345 P.3d 553 (explaining that the considerations for whether precedent is firmly established include "the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned"). To begin with, both cases are of recent vintage. *Warner* was issued on April 2, 2015, and *Allen* on June 25, 2015. Further, it appears that neither case has yet been cited or relied upon in subsequent appellate court decisions. In addition, as we have discussed, both cases appear to depart sharply from a long line of precedent. And we do not think that disavowing the anomalous mootness holdings of *Allen* and *Warner* portends any significant hardship to parties. Given the abundant precedent that suggests we presume collateral consequences only in the very narrow case of a challenge to a conviction, an appellant

seeking to survive a mootness challenge should be well-advised that in the ordinary case he or she bears the burden of demonstrating that an exception applies and that we will not lightly presume one. In this regard, it is significant that neither *Allen* nor *Warner* discussed or even acknowledged the litany of cases that we have dismissed for that very reason.

¶42 As a consequence, we conclude that it would be problematic to allow the mootness holdings of *Allen* and *Warner* to stand; rather, it seems prudent to take this early opportunity to straighten the path of precedent from which those cases departed. As the State points out, these two cases seem to have unintentionally put in doubt a principle that has otherwise been plainly stated and applied time and again. *See Eldridge*, 2015 UT 21, ¶ 22 (explaining pertinent considerations for overruling precedent). Accordingly, for the reasons stated above, we conclude that the mootness holdings in *Allen* and *Warner* were "originally erroneous" when they were decided and that "more good than harm will come by departing from [the] precedent" they set. *See State v. Bennett*, 2000 UT 34, ¶ 8, 999 P.2d 1 (citation and internal quotation marks omitted). Thus, we disavow the mootness holdings in *Allen* and *Warner* and proceed to consider Legg's appeal in light of established prior precedent.

### III. Legg's Appeal

¶43 Legg has challenged the district court's decision to revoke his probation and reinstate his prison sentence. Legg was released from prison, and his sentence expired as of July 15, 2015. Thus, because the relief he requests—reinstatement of his probation—is "impossible or of no legal effect," *State v. McClellan*, 2014 UT App 271, ¶ 4, 339 P.3d 942 (citation and internal quotation marks omitted), he must demonstrate that an exception to the mootness doctrine applies to survive dismissal, *see Duran v. Morris*, 635 P.2d 43, 45–46 (Utah 1981). Legg asserts that he will suffer collateral legal consequences if his challenge is not addressed. Because he has not challenged his underlying

conviction, however, "we will not presume that such collateral consequences exist." *State v. Moore*, 2009 UT App 128, ¶ 17, 210 P.3d 967. Rather, he must demonstrate the existence of "actual, adverse collateral consequences that have arisen from the failure to expunge his . . . record" of the probation revocation. *See id.; see also State v. Hooker*, 2013 UT App 91, ¶¶ 2–3, 300 P.3d 1292 (dismissing a challenge to a probation revocation where appellant did not attempt to demonstrate that his appeal "fit within a recognized exception to the mootness principle" (citation and internal quotation marks omitted)).

¶44 Legg asserts that having the probation revocation on his record could affect a sentencing recommendation that AP&P would provide the court in a future criminal case against him. He contends this is because AP&P details "every single instance of a defendant's prior probation revocations" in the pre-sentence investigation reports (PSR) they prepare, and a prior revocation is an "aggravating factor on a defendant's criminal history assessment" detailed in the report. But while a district court may decide to follow the sentencing recommendation in a PSR, it is not bound to do so. Rather, "the recommendations of the prosecutor or any other party are not binding upon the court." *State v. Moreau*, 2011 UT App 109, ¶ 11, 255 P.3d 689 (citation and internal quotation marks omitted). Thus, this sort of potential effect is not a disability imposed by law. Indeed, a decision whether to follow the recommendation of AP&P is not even a basis on which we may reverse a sentence for abuse of discretion. *See id.* ¶ 6 ("[A]n abuse of discretion will only be found if the district court fails to consider all legally relevant factors or if the sentence is clearly excessive, inherently unfair, or exceeds statutory or constitutional limits."). Instead, it is clear that this consequence is merely possible and therefore speculative, because a probation revocation is only one among many factors that could affect a court's discretionary sentencing decision, and that it is only a consequence if Legg again commits

a crime—itself a contingent event. *See Spencer v. Kemna*, 523 U.S. 1, 13–14 (1998).

¶45   Legg also asserts that prosecutors regularly refuse favorable offers of probation to those with prior probation revocations on their criminal records. Again, this is not a disability imposed by law. Instead, the decisions to negotiate the terms of a voluntary plea with a defendant and offer probation falls within "traditional prosecutor discretion," which "allows prosecutors to plea-bargain with offenders in *some* cases, saving the public the expense of criminal prosecutions." *State v. Martinez*, 2013 UT 23, ¶ 16, 304 P.3d 54 (emphasis added) (citation and internal quotation marks omitted). That a prior probation revocation is a disadvantage that generally follows those persons charged with crimes does not make it a legal consequence of the sort pertinent to the collateral consequence exception; rather, it is contingent and speculative. *See Barnett v. Adams*, 2012 UT App 6, ¶ 9, 273 P.3d 378 (declining to consider "potential legal impairments that generally impact a person" in like circumstances where no injury "actually suffered" or "even likely [to be] suffered" was demonstrated by appellant).

¶46   Thus, because Legg has not demonstrated the sort of collateral legal consequences related to this probation revocation that are necessary to invoke the collateral consequences exception to the mootness doctrine, he has not met the standard necessary to avoid dismissal. Accordingly, we dismiss his appeal as moot.

CONCLUSION

¶47   We disavow that the mootness holdings regarding collateral consequences in the context of probation revocations from two of our prior cases, *State v. Allen*, 2015 UT App 163, 353 P.3d 1266, and *State v. Warner*, 2015 UT App 81, 347 P.3d 846. As a consequence, we follow precedent that preceded those two

cases in concluding that Legg's appeal is moot and that he has failed to demonstrate that his case fits within a recognized mootness exception. Accordingly, because mootness is a jurisdictional bar, we have no alternative but to dismiss this appeal.

————————