**In the Matter of the Mental Condition of Lewis Lee GILES.**

**No. 17976.**

Supreme Court of Utah.

Nov. 29, 1982.

Ken Bresin, Lucy Billings, Salt Lake City, for appellant.

David L. Wilkinson, Atty. Gen., Elizabeth A. Bernstsen, Salt Lake City, for respondent.

HOWE, Justice:

This is an appeal from a ruling ordering the involuntary hospitalization of appellant in the Utah State Hospital. Appellant claims that the District Court did not strictly comply with statutory requirements and that its findings which are required to be made beyond a reasonable doubt [1] were not sufficiently supported by the evidence.

In 1976 appellant was admitted as a patient to the Utah State Hospital after he was found not guilty of aggravated assault by reason of insanity. He suffered from a personality disorder manifesting itself in sexual fantasies and concomitant aggressive behavior towards women. His criminal commitment was terminated in March of 1981. A written application for involuntary civil commitment was then immediately made to the Fourth Judicial District Court. The court ordered the appellant detained at the hospital pending a civil commitment hearing on April 23, 1981. Present at that hearing to testify to the mental condition of the appellant were two licensed alienists appointed by the court as designated examiners; a third licensed psychiatrist, who had been one of the alienists previously appointed by the court as designated examiner for the appellant under his criminal commitment to the hospital; the social worker assigned to the appellant at the hospital; and the appellant's family consisting of his mother and two brothers. Testimony was received from all witnesses, including the appellant himself. Basing its ruling on the evidence adduced at the hearing, the court committed the appellant to an indefinite period at the hospital. In accordance with statutory provisions, appellant requested, and was granted, a rehearing, at which the original ruling was affirmed. Subsequent to filing this appeal from that order, but within six months after the civil commitment had issued, the appellant was released from the hospital and at the time of oral argument before this Court was living with relatives.

■ The threshold inquiry we must address is whether or not the release of appellant from the hospital has mooted his appeal to preclude our decision on the merits. In recent opinions we have consistently stated that judicial policy dictates against our rendering an advisory opinion. *Black v. Alpha Financial Corp.,* 656 P.2d 409, 1982, and that courts refrain from adjudicating moot questions. *Merhish v. H.A. Folsom and Associates,* Utah, 646 P.2d 731 (1982). However, we have also recognized the exception to that rule where extraordinary circumstances require a decision on the merits, in spite of the fact that the controversy between the litigants has been terminated. *Wickham v. Fisher,* Utah, 629 P.2d 896 (1981). It is by now well established law that such an exception exists where the alleged wrong is "capable of repetition yet evading review." *So. Pac. Terminal Co. v. I.C.C.,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). See also *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), or where others similarly situate may suffer the same deprivations, *Wickham,* supra. Where collateral legal consequences may result from an adverse decision, courts have generally held an issue not moot and rendered a decision on the merits. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), accord *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). See also *Spain v. Stewart,* Utah, 639 P.2d 166, 167, Note 1 (1981). The doctrine of collateral legal consequences is chiefly applied in criminal cases where the absence or presence of those consequences may determine a criminal's chance of rehabilitation or recidivism. *Sibron,* supra. See also *Hudson v. Hardy,*

---

1. This standard of proof has since been changed by the Utah Legislature to a standard of "clear and convincing evidence" to align Utah law with the decision rendered in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

424 F.2d 854 (1970). However, the doctrine is equally applicable to patients of mental hospitals who face similar deprivations of liberty and whose commitment and hospitalization must stand scrutiny on the merits when challenged. *Friend v. United States,* 388 F.2d 579 (1967); *Justin v. Jacobs,* 449 F.2d 1017 (1971); *In re Ballay,* 482 F.2d 648 (1973).

In deciding this threshold issue, we are mindful of the fact that the appellant has lost none of his civil rights, inasmuch as their continued exercise is specifically granted to him as a patient under U.C.A., 1953, § 64–7–48(1)(c). The appointment of appellant's mother as his temporary legal guardian was sought and approved for the purpose of placing appellant under restrictions of abode and medical treatment only, and appellant was not declared an incompetent by those proceedings. We believe, however, that the collateral consequences that may be imposed upon appellant might arise were he to face future confrontations with the legal system. If his civil commitment should ever be used against him, either as character or credibility evidence, or in future civil commitment proceedings as evidence of prior history, this should be done only because the order committing him to the hospital was upheld on the merits, and not merely because the issue had become moot and the order remained a part of the record. As parens patriae the state has an interest in knowing that its order of civil commitment was appropriate in all respects and enforceable until the time of appellant's subsequent release. We therefore hold that the case under review is not moot.

We now turn to appellant's substantive claim that the court below could not have properly found, beyond a reasonable doubt, that the necessary elements for involuntary hospitalization existed at the time of his hearing for commitment. We address the five statutory prerequisites in the order of their appearance under U.C.A., 1953, § 64–7–36(10).

1. There was evidence from which the court below could have found, beyond a reasonable doubt, that the appellant suffered from a mental illness at the time of his hearing, as that condition is defined in U.C.A., 1953, § 64–7–28(1). The language of that statute provides, in disjunctive enumeration, that the psychiatric disorder substantially impair a person's "mental, emotional, behavioral, *or* related functioning." [Emphasis added.] The record indicates that Dr. Crist, one of the designated examiners, stated that the patient was not mentally ill *per se,* or that he did not "demonstrate this mental illness as one examines him." Dr. Culbertson, the other designated examiner, both in his letter of April 21, 1981, and on the witness stand, stated that appellant had a mental illness of personality disorder and that the problem was his aggressive behavior as demonstrated in the past. Dr. Washburn stated unequivocally that appellant "does have a mental illness."

2. There was evidence from which the court below could have found, beyond a reasonable doubt, that the appellant at the time of the hearing posed an immediate danger of physical injury to others or himself. All three alienists testified that the problem of dangerousness was a cogent issue, that lack of control of aggressive and sexual behavior directed towards females was apparent and that appellant's impulse control was very marginal. In answer to the direct question asked by counsel for appellant whether he could say, beyond a reasonable doubt, that appellant posed an immediate danger, Dr. Washburn answered, "Well, in my opinion I feel he does."

During the taking of testimony of Drs. Culbertson and Washburn, counsel for appellant placed great emphasis on the fact that the appellant had not, in a period in excess of one year, engaged in any aggressive behavior or acted upon his sexual fantasies. This alone would not suffice to disprove the element of immediate danger as argued by appellant. In *Colyar v. Third Judicial Dist. Court,* 469 F.Supp. 424 (10th Cir.1979) extensively relied upon by appellant in his claim of erroneous finding, the court specifically found as follows:

The court does not find that due process requires that the above elements be evidenced by a recent overt act. While it is true that many courts have required that commitment statutes include this criterion, the court is not convinced that, in reality, such criterion adds any substantial protection that is not already set out above ... [T]here is no scientific evidence that the requirement decreases the chance of error in predicting dangerousness. *Id.* at 434, 435.

3. There was evidence from which the court below could have found, beyond a reasonable doubt, that the appellant lacked the ability to engage in a rational decision-making process regarding acceptance of mental treatment as demonstrated by evidence of his inability to weigh the possible costs and benefits of treatment. The record contains a letter from Dr. Breck LeBegue, one of the physicians at the hospital, written in response to appellant's oral request that he be released and continue treatment at the hospital on a voluntary basis. The letter stated in pertinent part " ... It was clear from your statements that you had no *genuine* intention of remaining in the hospital for any reason." [Emphasis in letter.] The record also reflects unwillingness on the part of appellant to avail himself of medical treatment offered for his condition, unwillingness to interact with his therapist when he chose not to talk about his fantasies, and aggressive reaction when he was being confronted with his behavioral problems.

In this context appellant argues that the court below failed to make any attempts, sua sponte, to probe into the rationality of appellant's decision not to consent to available treatment. Appellant himself gave his reasons on the witness stand. His counsel did not probe appellant's capacity to consent to treatment. When a patient is represented by counsel, and under the specific circumstances of this case, we suggest, without further addressing the issue, that the court had no duty beyond receiving evidence on the appellant's ability or inability to weigh the costs and benefits of treatment.

4. There was evidence from which the court below could have found, beyond a reasonable doubt, that at the time of the hearing no less restrictive alternative existed to a court order of hospitalization. The testimony given by Drs. Culbertson and Washburn on this issue was consistent throughout, that a release to the home of appellant's mother did not afford the necessary 24-hour supervision and structure necessary to monitor appellant's impulsive behavior or rehabilitation; that the hospital was the appropriate place for custodial care and that outpatient care and visits to the family should be ventured only gradually.

5. There was evidence from which the court below could have found, beyond a reasonable doubt, that the hospital could provide appellant, at the time of the hearing, with treatment that was adequate and appropriate to his conditions and needs. In spite of the statement made by all witnesses that the hospital's main function was to provide the proper custodial setting for appellant, the record discloses that appellant's behavior was constantly monitored and countermanded by staff's attempts "to reduce the possibility of that behavior by confronting [appellant] and by keeping female staff away from him." Culbertson letter. The social worker testified that appellant was involved in group therapy and recreational therapy, and Dr. LeBegue's letter indicates the availability of medication to treat appellant's condition. Beyond that it should be noted that the ruling of the court below included an order that the hospital arrange for appropriate treatment of appellant by an outpatient mental health facility and that both facilities were ordered to cooperate with each other in providing treatment appropriate to appellant's conditions and needs.

Counsel for appellant relies heavily upon the lack of progress shown by appellant during the five years of the institutionalization and would find error in the trial court's findings based upon statements made that the hospital was mostly a detention center offering custodial care. Appellant is re-

ferred to *Colyar,* supra, where the court recognized that in a given case custody might have to be the main aspect of the treatment:

> The use of the word "treatment" here should not be construed to preclude the possibility of an individual seeking custodial care. Nor should it be construed as implying that the state may commit only those for whom there is currently a proven efficacious treatment. It is unfortunate, but true, that at the present time there are many emotional disturbances that do not lend themselves to treatment and cure. Therefore, for the purposes of this decision, the court assumes, without deciding, that a state may validly recognize this reality, and, given conformity to other due process requirements, may involuntarily commit an individual for custodial care, though no known treatment is available. *Id.* at 431, Note 5.

Considering in the aggregate the various aspects of the evidence submitted below and with the purpose of sustaining the findings made and ruling entered, we find that the court below met the high standard of proof beyond a reasonable doubt. It is not the function of a review court to weigh conflicting evidence. If there is any competent evidence from which the trial court could have made its findings and conclusions beyond a reasonable doubt, the judgment or order will not be disturbed on appeal.

Appellant next argues that he should be paid attorney's fees under U.C.A., 1953, § 64–7–36(9). The language of that section reads in pertinent part as follows:

> In the case of an *indigent* patient, the payment of reasonable attorney's fees for counsel *as determined by the court* shall be made by the county in which the patient resides or was found. [Emphasis added.]

Although appellant was represented by a member of the staff of Utah Legal Services, Inc., counsel did not establish on the record that appellant was indeed indigent, nor did counsel request the court below to determine reasonable attorney's fees to be awarded her client. The issue was first raised on appeal and we must decline to address it at this point.

We note, parenthetically, that counsel for appellant also claims attorney's fees under 42 U.S.C., § 1988. The action brought below was a motion for dismissal of an application for involuntary hospitalization, not a proceeding to enforce a provision of § 1983, under which a court would have the discretion to allow the *prevailing* party reasonable attorney's fees, as provided by § 1988.

The ruling of the court below is affirmed. No costs awarded.

HALL, C.J., and OAKS, J., concur.

STEWART, J., concurs in the result.

DURHAM, J., does not participate herein.