2015 UT App 81

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
RONALD ROGER WARNER,
Defendant and Appellant.

Memorandum Decision
No. 20130784-CA
Filed April 2, 2015

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
Nos. 111500014 & 101500766

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.

DAVIS, Judge:

¶1 Ronald Roger Warner appeals from a hearing on a consolidated order to show cause during which the district court revoked his probation on two separate cases. Warner argues that the district court did not have sufficient evidence to support its revocations, that the court erred by failing to consider alternatives to reinstating Warner's sentences, and that the court's decision contravened public policy. The State argues that Warner's appeal is moot because he was released from the reinstated jail sentences on January 29, 2014, and that, as a result, this court lacks jurisdiction to decide the issues Warner presents on appeal. We do not agree that mootness principles prevent our review. We affirm the district court's decision.

## I. Mootness

¶2 "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *In re C.D.*, 2010 UT 66, ¶ 11, 245 P.3d 724 (citation and internal quotation marks omitted). However, "[w]here collateral legal consequences may result from an adverse decision, courts have generally held an issue not moot and rendered a decision on the merits." *Barnett v. Adams*, 2012 UT App 6, ¶ 7, 273 P.3d 378 (citation and internal quotation marks omitted). "'[A] criminal case is moot only if it is shown that there is *no possibility* that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981) (emphasis added) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)); *accord Gardiner v. York*, 2010 UT App 108, ¶ 33, 233 P.3d 500. In criminal cases, collateral legal consequences include the effects a conviction has on "the petitioner's []ability to vote, engage in certain businesses, or serve on a jury," as well as the effects a conviction may have in future legal proceedings, i.e., as a tool to impeach the petitioner's character or as a factor in sentencing. *Duran*, 635 P.2d at 45 (citing *Sibron*, 392 U.S. at 57; *Carafas v. LaVallee*, 391 U.S. 234 (1968)); *see also In re Giles*, 657 P.2d 285, 286 (Utah 1982) (recognizing that "the absence or presence of [collateral] consequences may determine a criminal's chance of rehabilitation or recidivism").

¶3 The State contends that Warner's enumerated collateral consequences are "merely hypothetical or possible." (Citation and internal quotation marks omitted.) This argument is based on the standard applicable to civil cases, not criminal cases. *See Towner v. Ridgway*, 2012 UT App 35, ¶ 7, 272 P.3d 765 (explaining that collateral consequences may be presumed when "a party is challenging a criminal conviction" but not in civil cases, where "a litigant must show that the collateral consequences complained of are not merely hypothetical or possible but that they are probable and represent actual and adverse

consequences" (citation and internal quotation marks omitted)). And the potentially hypothetical nature of the collateral consequences facing a criminal defendant has not prevented Utah courts from reaching the merits of an otherwise-moot criminal appeal. S*ee, e.g.*, *Giles*, 657 P.2d at 287 (holding that a post-release challenge to involuntary commitment to a mental institution was not moot because of "the collateral consequences that may be imposed upon appellant" "were he to face future confrontations with the legal system"); *State v. C.H.*, 2008 UT App 404U, para. 2 (holding that a mother's challenge to a criminal contempt order was not barred by the mootness doctrine when the child-custody proceedings were transferred to another state, because the mother's conviction in Utah "may negatively impact future decisions of [the Division of Child and Family Services] with respect to [her] rights to parent her children"). We decline to extend the civil approach to collateral consequences to this criminal appeal, and we are not convinced that Warner faces no possible collateral consequences as a result of his revoked probation terms. *See Duran*, 635 P.2d at 45; *see also United States v. O'Leary*, No. 96-2248, 1997 WL 428597, at *1 n.1, 120 F.3d 271 (10th Cir. July 30, 1997) (applying the collateral consequences exception to a probation-revocation challenge); *Hahn v. Burke*, 430 F.2d 100, 102 (7th Cir. 1970) (recognizing that probation revocation can "affix[] a permanent blemish to [a] petitioner's record" that could be "take[n] into account" if the "petitioner ever has future difficulties with the law"); *People v. Halterman*, 359 N.E.2d 1223, 1225 (Ill. App. Ct. 1977) (same). Accordingly, we reach the issues underlying Warner's appeal. *See generally Sibron*, 392 U.S. at 57 (recognizing, in the context of deciding whether to "entertain[] moot controversies," that "it is far better to eliminate the source of a potential legal disability than to require the citizen to suffer the possibly unjustified consequences of the disability itself for an indefinite period of time"); *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233 ("Because mootness is a matter of judicial policy, the ultimate

determination of whether to address an issue that is technically moot rests in the discretion of this court.").

## II. Sufficiency of the Evidence

¶4    "Upon a finding that the defendant violated the conditions of probation, the court may order the probation revoked, modified, continued, or that the entire probation term commence anew." Utah Code Ann. § 77-18-1(12)(e)(ii) (LexisNexis Supp. 2014). "The decision to grant, modify, or revoke probation is in the discretion of the trial court," and "a trial court's finding of a probation violation is a factual one and therefore must be given deference on appeal unless the finding is clearly erroneous." *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994) (citation and internal quotation marks omitted). Finally, "[f]or a trial court to revoke probation based on a probation violation, the court must determine by a preponderance of the evidence that the violation was willful," which "merely requires" an implicit or explicit "finding that the probationer did not make bona fide efforts to meet the conditions of his probation." *State v. Robinson*, 2014 UT App 114, ¶ 16, 327 P.3d 589 (citation and internal quotation marks omitted).

¶5    Warner appeals from a consolidated order to show cause hearing during which the district court revoked his probations in two separate cases. Our analysis in this section, *see infra* ¶¶ 6–8, concerns the second of those cases, in which Warner pleaded guilty to charges of domestic-violence assault and interference with a police officer, both class-B misdemeanors (the Class-B case). The other case involved Warner's guilty plea to one charge

of domestic-violence assault, a class-A misdemeanor (the Class-A case).[1]

¶6    The court stayed Warner's sentence and placed Warner on probation for a term of eighteen months, requiring, among other conditions, that he pay a $500 fine and a $66 fee, together, in monthly increments of $50 "beginning April 1, 2011."

¶7    At the July 2013 consolidated order to show cause hearing, the district court determined that Warner violated the terms of probation "by having failed to pay his fines and fees as ordered." The court took "judicial notice of [court] records, indicat[ing] that [Warner] paid nothing and the entire amount was referred to the Office of State Debt Collection on February 13th of 2012." The court asked Warner's counsel if he had any objections to the court taking judicial notice of the enumerated facts, and Warner's counsel explicitly indicated that he had no objections and no evidence to present.

¶8    Warner now contends that the district court lacked sufficient evidence to revoke his probation in the Class-B case. Warner argues that the probation order required him to pay the $566 debt within sixty days of his being released from jail and that because there was no evidence before the court indicating when Warner was released from jail, the court could not determine whether Warner actually violated this condition. The probation order in the Class-B case, however, imposed no such date on Warner's requirement to pay fines; the probation order established a payment schedule "beginning April 1, 2011." There

---

1. In revoking Warner's probation for the Class-A case, the court judicially noticed several facts to support its determination that Warner violated four terms of that probation order. Warner acknowledged during the revocation hearing that he failed to "adhere to the probationary terms" in the Class-A case.

were other, unrelated conditions that were to be completed within sixty days of Warner's release. The district court acknowledged that there was no evidence indicating when Warner was released from jail to determine whether Warner breached these other conditions.[2] Accordingly, the court limited its revocation decision to the judicially noticed fact that Warner "failed to pay his fines as ordered." Warner provided no mitigating evidence or explanation as to why he failed to make any payment by April 1, 2011, or any payments at all on the $566 obligation. Warner's obligation to make payments was continuous and did not cease until he paid the entire $566 balance. The evidence shows that he made no payments during the two-year period between the initial April 1, 2011 due date and the time the court revoked his probation and that the entire debt was ultimately referred to the Office of State Debt Collection. The court's judicial notice of its own records indicating that no payments were ever made is sufficient

2. The State submitted testimony from an employee at the jail where Warner was incarcerated to clarify the dates of Warner's incarceration and provide a framework for calculating when the sixty-day deadline was reached. The witness testified that Warner was released on April 1, 2011. However, Warner successfully moved to strike that testimony on the grounds that the State failed to include the witness in its response to Warner's discovery requests. We recognize that the stricken testimony indicates that Warner's release date of April 1, 2011, is the same day that his first monthly payment on the $566 debt was due. Although that stricken information may provide some explanation or mitigation for Warner's failure to otherwise timely make the April 1, 2011 payment, we do not consider it in our analysis. Rather, we rest our conclusion on the undisputed evidence found by the district court that Warner failed to make *any* payment on the $566 fine whatsoever, either in accordance with the established payment schedule or any time thereafter.

evidence that Warner violated that term of his probation order. Further, although the court did not "use the precise legal terminology," we interpret this finding as indicating that Warner's violation was "willful" because he failed to "make bona fide efforts to meet the conditions of his probation." *See Peterson*, 869 P.2d at 991 (emphasis omitted) (citation and internal quotation marks omitted).

## III. Alternatives to Revocation

¶9    Warner next argues that the district court failed to "adequately consider alternatives to imprisonment" and failed to satisfy its "duty . . . to inquire as to why the probation violation occurred." He raises this argument as a challenge to the revocation of probation in both cases. Specifically, he challenges the court's failure to inquire further into his attorney's statement at the revocation hearing explaining that Warner "is more able to [comply] now than he has [been] in the past because he has made arrangements where he is back with his tribe and reservation in Arizona where he has access to more of those resources to be able to accomplish some of those things."

¶10    This argument places the burden on the district court to identify and develop Warner's arguments against revocation. This is not the district court's obligation, and we are not convinced that the district court was required to inquire into Warner's counsel's statement any further. It is only when "the trial court determines that a probationer's violation was not willful" that the court must "'consider "whether adequate alternative methods of punishing the defendant are available."'" *State v. Brady*, 2013 UT App 102, ¶ 4, 300 P.3d 778 (quoting *State v. Orr*, 2005 UT 92, ¶ 34, 127 P.3d 1213 (quoting *Bearden v. Georgia*, 461 U.S. 660, 669 (1983))). Moreover, the requirement to consider alternatives in the absence of a finding of willfulness

does not clearly extend beyond revocations based on a failure to pay a fine or restitution.[3]

¶11  As explained above, Warner's violation in the Class-B case was willful. And the district court acknowledged Warner's attorney's statements but nonetheless stated that Warner's actions during probation in both cases did not "convince [the court] . . . that [Warner has] changed, that [he is] not going to hit

---

3. The United States Supreme Court explained in *Bearden v. Georgia*, 461 U.S. 660 (1983),

> If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a substantial reaso[n] which justifie[s] or mitigate[s] the violation and make[s] revocation inappropriate.

*Id.* at 668–69 (alterations in original) (footnote, citations, and internal quotation marks omitted).

people anymore, that [he is] not going to violate the law anymore." The court stated,

> I don't know if you just don't care. I don't know if you're mad at the system and you're just not going to do anything. I, really, don't know why, but you haven't done what you're supposed to do on probation and I don't think you're going to. I think that you're going to continue to not comply with probation. So, I'm not going to give you another chance on probation.

¶12  The district court's analysis suggests that Warner treated probation with indifference and willful disregard for the conditions imposed. Therefore, we conclude that the district court implicitly found that Warner's violations in both the Class-A and Class-B cases were willful. The changes Warner made in his living situation that would purportedly facilitate his future compliance with probation do not undermine this implicit finding of willfulness. Indeed, we have recognized that a probationer's failure to take mitigating actions sooner can be indicative of willfulness. *See, e.g.*, *Brady*, 2013 UT App 102, ¶ 7 (noting that evidence that the probationer "could have already been looking for a second job and already paying restitution" supported a finding of a willful failure to comply with the financial conditions of his probation (emphasis omitted)); *State v. Archuleta*, 812 P.2d 80, 85 (Utah Ct. App. 1991) (characterizing a probationer's failure to pay even "'one nickel'" toward restitution as a willful violation of probation); *State v. Hodges*, 798 P.2d 270, 275 (Utah Ct. App. 1990) (equating "token participation" in a required treatment program with "willfully inadequate" behavior sufficient to sustain a probation revocation). Accordingly, "[t]he record evidence here, viewed in the light most favorable to the trial court's findings, supports the trial court's implicit finding of willfulness," *see State v. Robinson*, 2014 UT App 114, ¶ 19, 327 P.3d 589, and absolves the district

court of any obligation to affirmatively consider alternatives to revocation.

## IV. Public Policy Considerations

¶13 Last, Warner argues that "incarcerating him on revocation is not in line with the underlying purpose of probation and does not serve a societal interest." Central to his argument is his assertion that the reinstatement of his sentence was not "necessary" for public safety because his particular probation violations do not create a public endangerment. Warner has not persuaded us that such an inquiry is necessary, particularly here, where the underlying convictions involve violent crimes. Indeed, the district court's statements at the revocation hearing depict Warner as incapable of controlling the violent impulses that resulted in the two distinct episodes of domestic violence underlying his cases. In addressing Warner directly, the district court explained the purpose of Warner's probation, stating, "[T]he reason [complying with probation] is tough is because we're trying to . . . impose some conditions that would help you not do this again; in other words, that you don't go around hitting people when you get mad at them because we just can't have that in society . . . ." Accordingly we reject this argument.

¶14 In conclusion, the district court did not abuse its discretion in revoking both of Warner's probation terms and reinstating his sentences. We affirm.

_____