*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 12**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

JOHN L. LEGG, JR.,
*Petitioner.*

No. 20160810
Filed March 27, 2018

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Ann Boyden
No. 101900677

Attorneys:

Sean D. Reyes, Att'y Gen., Jeanne B. Inouye, Asst. Solic. Gen., Salt
Lake City, for respondent

Diana Pierson, Salt Lake City, for petitioner

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUDGE JOHNSON joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
DISTRICT COURT JUDGE CHRISTINE JOHNSON sat.

JUSTICE PETERSEN became a member of the Court on November 17,
2017, after oral argument in this matter and accordingly did not
participate.

JUSTICE HIMONAS, opinion of the Court:

### INTRODUCTION

¶1 While Mr. Legg's appeal of the revocation of his probation
was in process, he completed the sentence the revocation required
and was released from prison. Despite the presence of two of its

prior decisions with contradictory holdings, the court of appeals then dismissed Mr. Legg's case as moot because of his release. This case presents two issues for our review. First, we must determine whether the court of appeals acted appropriately when it overturned these prior decisions. Second, we must decide whether collateral legal consequences are presumed when an appeal from a probation revocation has otherwise become moot or whether a defendant will be required to show actual collateral legal consequences.

¶2 We conclude that the court of appeals has the same authority to overturn its own precedent as this court and, moreover, acted appropriately in overturning its prior precedent in this case. Additionally, in a well-reasoned and thoughtful opinion, the court of appeals concluded that collateral legal consequences won't be presumed when an appeal from a probation revocation has otherwise become moot. *State v. Legg* (*Legg II*), 2016 UT App 168, ¶ 25, 380 P.3d 360. We agree with the court of appeals on both issues and therefore affirm their decision to dismiss Mr. Legg's appeal as moot.

## BACKGROUND

¶3 Mr. Legg pled guilty in two separate cases[1] to one count each of possession of a dangerous weapon by a restricted person and aggravated assault with a deadly weapon, both third-degree felonies. The district court sentenced Mr. Legg in both cases to the Utah State Prison for the indeterminate term of zero to five years. The court then suspended the prison sentences and placed Mr. Legg on probation for a period of twenty-four months. The court ordered the prison commitments and the periods of probation to run concurrently to one another. Shortly thereafter, Mr. Legg's probation was revoked in both cases for three probation violations, requiring him to serve out his prison sentences. Mr. Legg appealed the district court's decision to revoke his probation in both cases.[2] The court of appeals upheld the district court's findings on one of the probation

---

[1] These guilty pleas occurred in case numbers 101900677 (aggravated assault with a deadly weapon) and 101901007 (possession of a dangerous weapon by a restricted person).

[2] The cases were consolidated for the purposes of the appeal.

violations but found that the district court had insufficient evidence in the record to support the other two findings of probation violations. The court of appeals then remanded the cases to the district court to determine if there was sufficient evidence to support the other two probation violations and to "reassess whether, under all of the circumstances, [Mr.] Legg's probation should be revoked."

¶4　On remand, the state dropped the two probation violations that the court of appeals said were not yet supported by sufficient evidence. The district court determined that the single probation violation upheld by the court of appeals was sufficient to warrant revoking Mr. Legg's probation. The district court therefore upheld the probation revocations in both of Mr. Legg's cases. Mr. Legg then filed an appeal in one case[3] arguing that the district court erred by not making evidentiary determinations on the two probation revocations, as mandated by the court of appeals. During the pendency of the second appeal, Mr. Legg completed his sentence and was released from prison.

¶5　The court of appeals determined that Mr. Legg's appeal was moot and dismissed his case. *Legg II*, 2016 UT App 168, ¶ 46, 380 P.3d 360. To reach this conclusion, the court of appeals overturned two of its prior cases (*State v. Warner*, 2015 UT App 81, 347 P.3d 846, and *State v. Allen*, 2015 UT App 163, 353 P.3d 1266), and concluded that adverse legal consequences aren't presumed in probation revocation cases. *Legg II*, 2016 UT App 168, ¶¶ 41–42. Additionally, the court of appeals found that Mr. Legg had been unable to set forth any actual adverse legal consequences he suffers as a result of his probation revocation. *Id.* ¶ 46.

¶6　Mr. Legg appeals this decision, arguing that the court of appeals erred in two respects. First, Mr. Legg contends that the court of appeals was incorrect in overturning its prior precedent under horizontal *stare decisis*. Second, Mr. Legg asserts that the court of appeals was incorrect in dismissing his case as moot because he was able to assert both presumed and actual collateral legal consequences. We have jurisdiction under Utah Code section 78A-3-102(5).

---

[3] Mr. Legg only filed his appeal in case 101900677.

**STANDARD OF REVIEW**

¶7   "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. White*, 2011 UT 21, ¶ 14, 251 P.3d 820. "[A]ppellate courts review the issue of mootness de novo." *Cedar Mountain Envtl., Inc. v. Tooele Cty. ex rel. Tooele Cty. Comm'n*, 2009 UT 48, ¶ 7, 214 P.3d 95 (alteration in original) (citation omitted).

**ANALYSIS**

I. THE COURT OF APPEALS CAN OVERTURN ITS PRIOR DECISIONS USING THE *ELDRIDGE* FACTORS

¶8   In *Legg II*, 2016 UT App 168, 380 P.3d 360, the court of appeals overruled two of its prior decisions: *State v. Warner*, 2015 UT App 81, 347 P.3d 846, and *State v. Allen*, 2015 UT App 163, 353 P.3d 1266. Mr. Legg argues that the decision to overrule these cases should be reversed because it violated horizontal *stare decisis*.

¶9   "Stare decisis is a cornerstone of Anglo-American jurisprudence because it is crucial to the predictability of the law and the fairness of adjudication." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (citation omitted) (internal quotation marks omitted). Under the doctrine of horizontal *stare decisis*, "the first decision by a court on a particular question of law governs later decisions by the same court." *State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) (citation omitted), *superseded on other grounds by constitutional amendment*, UTAH CONST. art. I, § 12, *as recognized in State v. Goins*, 2017 UT 61, ___P.3d ___. "Although the doctrine is typically thought of when a single-panel appellate court is faced with a prior decision from the same court, *stare decisis* has equal application when one panel of a multi-panel appellate court is faced with a prior decision of a different panel." *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993). Therefore, one panel on the court of appeals owes great deference to the precedent established by a different panel on the court of appeals. The doctrine of horizontal *stare decisis* "applies as between different panels of the court of appeals." *Menzies*, 889 P.2d at 399.

¶10 In *Eldridge*, we recognized that "our presumption against overruling precedent is not equally strong in all cases." 2015 UT 21, ¶ 22. Where horizontal *stare decisis* is concerned, *Eldridge* established "two broad factors" that appellate courts must use to "distinguish between weighty precedents and less weighty ones: (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent

has become established in the law since it was handed down." *Id.* "The second factor encompasses a variety of considerations, including the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned." *Id.* We've since summarized the *Eldridge* test as prohibiting us from "overrul[ing] our precedents unless they've proven to be unpersuasive and unworkable, create more harm than good, and haven't created reliance interests." *Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 57, ___P.3d ___ (citing *Eldridge*, 2015 UT 21, ¶ 22, and *Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶¶ 16–17, 275 P.3d 208).

¶11 The court of appeals correctly relied on the *Eldridge* factors when deciding to overrule *Warner* and *Allen*. *Stare decisis* mandates that one panel of the court of appeals defer to the decision of a prior panel. *Thurman*, 846 P.2d at 1269. But a panel still retains the right to overrule another panel's decision if the appropriate standard is met. *Menzies*, 889 P.2d at 399 n.3. Here, the court of appeals did an excellent job of setting forth its basis for reversing *Warner* and *Allen*. As the court of appeals noted, the panels in *Warner* and *Allen* simply presumed that collateral legal consequences existed in probation revocation cases without analyzing whether such an extension of the law would be appropriate and despite prior contrary authority. *Legg II*, 2016 UT App 168, ¶¶ 28, 31, 35. Additionally, the court of appeals found that the cases (both barely one year old at the time) had yet to be cited by another appellate court and were not firmly established in the law. *Id.* ¶ 41.

¶12 We see no fault in the court of appeals' thorough and thoughtful analysis on this issue. However, unlike the court of appeals, as a court of last resort we're not bound by the precedent of the court of appeals. Therefore, it's not necessary for us to engage in an in-depth analysis to determine whether the court of appeals correctly applied the *Eldridge* factors when it overturned those decisions because it has no bearing on the outcome of our holding regarding the mootness question. Instead, we review the court of appeals' decision on mootness de novo. *See Cedar Mountain Envtl., Inc. v. Tooele Cty. ex rel. Tooele Cty. Comm'n*, 2009 UT 48, ¶ 7, 214 P.3d 95. And we agree with the court of appeals that collateral legal consequences aren't presumed for probation revocation cases.

## II. MR. LEGG'S APPEAL IS MOOT

¶13   Our courts don't possess an unrestricted ability to hear and decide all issues that a party wishes to put before us. Mootness, for example, presents one of the several bases that may prevent a court from reaching the merits of a case. *See Carlton v. Brown*, 2014 UT 6, ¶ 30, 323 P.3d 571. "An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants." *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (citation omitted) (internal quotation marks omitted). We generally won't decide an issue that becomes moot while on appeal. *State v. Black*, 2015 UT 54, ¶ 10, 355 P.3d 981 ("An issue becomes moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." (citation omitted) (internal quotation marks omitted)). "The burden of persuading the court that an issue is moot lies with the party asserting mootness." *Salt Lake Cty. v. Holliday Water Co.*, 2010 UT 45, ¶ 21, 234 P.3d 1105 (citation omitted) (internal quotation marks omitted). If the party asserting mootness meets its burden, the "appeal must be dismissed as moot unless it can be shown to fit within a recognized exception to the mootness principle." *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981).

¶14   There are two generally recognized exceptions to mootness. The first exception is the public interest exception. Under the public interest exception, a court may consider a matter that appears moot "if it (1) presents an issue that affects the public interest, (2) is likely to recur, and (3) because of the brief time that any one litigant is affected, evades review." *Black*, 2015 UT 54, ¶ 12 (citation omitted). The second exception exists when collateral legal consequences will result from the case. In certain cases, such as the appeal of a criminal conviction, collateral legal consequences are presumed. *Duran*, 635 P.2d at 45. When collateral legal consequences are presumed, the case isn't moot unless "it can be shown that no adverse collateral consequences" will result. *Id.* (citing *North Carolina v. Rice*, 404 U.S. 244 (1971)). When collateral legal consequences aren't presumed, a case is moot unless the party opposing mootness can establish actual collateral legal consequences. *See Spencer v. Kemna*, 523 U.S. 1, 14 (1998).

¶15   Here, the state has met its burden of establishing mootness. Mr. Legg is challenging his probation revocation and the reinstatement of his prison sentences. During the pendency of this appeal, Mr. Legg served his sentences and has been released from

prison. As the court of appeals noted, "[a] new revocation hearing will not allow the district court to reinstate his probation and give him another opportunity to avoid the prison term ordered as a result of his probation revocation." *Legg II*, 2016 UT App 168, ¶ 10, 380 P.3d 360 (alteration in original). "As a consequence, providing [Mr.] Legg with relief from his probation revocation would be 'of no legal effect.'" *Id.* (quoting *Black*, 2015 UT 54, ¶ 10).

¶16 Nonetheless, Mr. Legg asserts that his appeal isn't moot because (1) there are presumed collateral legal consequences in probation revocation cases, or (2) Mr. Legg will suffer actual collateral legal consequences. We disagree with Mr. Legg and consequently conclude that his appeal is moot.

*A. There Are No Presumed Collateral Legal Consequences in Probation Revocation Cases*

¶17 It's well settled that we presume collateral legal consequences follow criminal convictions. *See Duran*, 635 P.2d at 45. This presumption recognizes that the law mandates numerous legal consequences follow a criminal conviction to such an extent that the existence of at least one collateral legal consequence for an individual defendant is effectively inevitable. *See Spencer*, 523 U.S. at 12 ("[T]he presumption of significant collateral consequences is likely to comport with reality."); *Sibron v. New York*, 392 U.S. 40, 55 (1968) ("[T]he obvious fact of life [is] that most criminal convictions do in fact entail adverse legal consequences."). While the application of any individual collateral legal consequence to a particular defendant may remain hypothetical, the ultimate existence of such a consequence, and the resulting exception to mootness, is anything but. Therefore, we've adopted a presumption of collateral legal consequences for challenges to criminal convictions, shifting the burden to the state to disprove the existence of any collateral legal consequence to render the case moot. *Duran*, 635 P.2d at 45.

¶18 The presumption of collateral legal consequences does not come lightly. We will only presume collateral legal consequences when the challenged action carries extensive collateral consequences imposed by law. These consequences must be sufficient to mandate the same undeniable conclusion as criminal convictions, i.e., the existence of a collateral legal consequence is virtually inescapable.

¶19 Historically, collateral legal consequences of a criminal conviction were sufficient to ameliorate mootness concerns only if the defendant could establish "concrete disadvantages or disabilities

that had in fact occurred, that were imminently threatened, or that were imposed as a matter of law." *Spencer*, 523 U.S. at 8. Over time, courts have moved away from this steadfast requirement.

¶20  By 1968, the United States Supreme Court recognized that it had "abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed." *Sibron*, 392 U.S. at 55. Since that time, the United States Supreme Court has "proceeded to accept the most generalized and hypothetical of consequences as sufficient to avoid mootness in challenges to conviction." *Spencer*, 523 U.S. at 10; *see also Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985) (finding collateral legal consequences even when the defendant's "civil rights, including suffrage and the right to hold public office" were restored because the defendant is still subject to "the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future"); *Pennsylvania v. Mimms*, 434 U.S. 106, 108 n.3 (1977) (rejecting the defendant's argument that the state's appeal from a reversal of his conviction was moot because "[i]f the prospect of the State's visiting such collateral consequences on a criminal defendant who has served his sentence is a sufficient burden as to enable him to seek reversal of a decision affirming his conviction, the prospect of the State's inability to impose such a burden following a reversal of the conviction of a criminal defendant in its own courts must likewise be sufficient to enable the State to obtain review of its claims on the merits"); *Benton v. Maryland*, 395 U.S. 784, 790 (1969) (acknowledging the "possible adverse collateral effects of criminal convictions" outlined in prior cases, such as consideration of a felony conviction "for the purpose of enhancing sentence[s] under habitual criminal statutes," and concluding that "[i]t is enough to say that there are such possibilities in this case"); *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (noting collateral legal consequences of a criminal conviction include the ability to "engage in certain businesses; . . . serve as an official of a labor union for a specified period of time; . . . vote in any [state] election . . . [; or] serve as a juror" (footnotes omitted)).

¶21 Today, when a criminal defendant appeals his or her conviction, collateral legal consequences are presumed. The evolution in the law is largely based on the recognition that criminal convictions carry a unique set of consequences that are legally

imposed. *Duran*, 635 P.2d at 45 ("[I]t is now clearly established that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." (citation omitted) (internal quotation marks omitted)); *see also Spencer*, 523 U.S. at 8 ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur.)").

¶22 In line with the United States Supreme Court precedent, we've similarly recognized several collateral legal consequences that may result from a criminal conviction, such as "the use of the conviction to impeach the petitioner's character or as a factor in determining a sentence in a future trial, as well as the petitioner's inability to vote, engage in certain businesses, or serve on a jury." *Duran*, 635 P.2d at 45.

¶23 Importantly, while these collateral legal consequences are presumed, they're not unlikely or highly speculative. In fact, most of these consequences are "imposed by law." *State v. McClellan*, 2014 UT App 271, ¶ 5, 339 P.3d 942 (Consequences that "are not imposed by law . . . do not qualify as collateral consequences."). A witness's prior criminal convictions *must* be admitted, subject to certain limitations, to attack the "witness's character for truthfulness." UTAH R. EVID. 609. Additionally, previous criminal convictions are used as mandatory charge enhancements. *See, e.g.*, UTAH CODE § 41-6a-503 (A person's first or second DUI may be a class B or class A misdemeanor, but a third DUI within ten years *must* be a third-degree felony.); *id.* § 58-37-8 (increasing the level of offense for subsequent convictions of violating the Utah Controlled Substances Act); *id.* § 77-36-1.1 (increasing the level of offense for domestic violence if the defendant was convicted of a previous instance of domestic violence). Similarly, a person convicted of particular crimes is statutorily ineligible for certain employment positions and licenses. *See, e.g.*, *id.* § 11-10-2 (precluding "anyone who has been convicted of a felony or misdemeanor involving moral turpitude" from receiving a liquor license); *id.* § 17-30-7 (disqualifying a person who "[h]as been convicted of a criminal offense inimical to the public service, or involving moral turpitude" from taking a deputy sheriff examination); *id.* § 26-39-404(3) (prohibiting those with felony or misdemeanor convictions from providing child care at a licensed child care facility); *id.* § 53-6-302 (preventing anyone who has "been

convicted of a crime for which [he or she] could have been punished by imprisonment in a federal penitentiary or by imprisonment in the penitentiary of [Utah] or another state" from obtaining a dispatcher certification). The presumption of collateral legal consequences is merely an "acknowledge[ment of] the obvious fact of life that most criminal convictions do in fact entail adverse collateral *legal* consequences." *Sibron*, 392 U.S. at 55 (emphasis added).

¶24 Presumed collateral legal consequences aren't inherently limited to the realm of criminal convictions. *See In re Giles*, 657 P.2d 285, 286–87 (Utah 1982) (presuming collateral legal consequences in a civil commitment case). Nor are collateral legal consequences presumed in all cases involving criminal penalties. *See Duran*, 635 P.2d at 45 (finding that an administrative segregation decision "entail[s] no collateral legal consequences of the kind that result from a criminal conviction").

¶25 Mr. Legg asks us to presume collateral legal consequences when a criminal defendant is appealing his or her probation revocation. After careful consideration of the reasoning underlying the decision to presume collateral legal consequences in appeals from criminal convictions, we decline to extend this presumption to appeals of probation revocations.

¶26 As discussed above, criminal convictions subject a defendant to unquestionable, concrete consequences imposed by law. *Supra* ¶ 21. The question of mootness doesn't turn on which collateral legal consequences the defendant will suffer, but on whether "the requested judicial relief can[] affect the rights of the litigants." *Sims*, 881 P.2d at 841 (citation omitted). Rather than force a defendant to establish which of the myriad legal consequences he or she is actually faced with, we presume that such consequences exist for the purposes of satisfying our mootness concerns. Moreover, we still leave open the ability for the state to show that the case is moot by establishing that "no adverse collateral consequences will follow" the criminal conviction. *Duran*, 635 P.2d at 45.

¶27 Presumed exceptions to mootness shouldn't be found lightly. It would be improper for us to create exemptions from our jurisdictional requirements based on nothing more than contingent and speculative collateral consequences with no legal basis. We've not overstepped these boundaries in presuming collateral legal consequences arising from criminal convictions because, "[i]n the context of criminal conviction[s], the presumption of significant

collateral consequences is likely to comport with reality." *Spencer*, 523 U.S. at 12.

¶28 "The same cannot be said of [probation or] parole revocation." *Id.* Mr. Legg raises four potential collateral legal consequences to support his argument that we should *presume* collateral legal consequences in *all* cases of probation revocation. First, Mr. Legg argues that "*potential* collateral legal consequences from a probation revocation *may* include use of the revocation as 'prior history' in future contact with the legal system." (Emphases added). Second, Mr. Legg notes that the Adult Probation & Parole Office (AP&P) uses probation revocations as an "aggravating factor" in the sentencing recommendation matrix. Third, Mr. Legg contends that "the state regularly refuses plea offers or offers of probation to defendants with probation revocations." Finally, Mr. Legg asserts that a defendant whose probation has been revoked is unable to qualify for a reduction of the degree of his or her offense under Utah Code section 76-3-402.

¶29 These potential collateral consequences aren't sufficient to warrant presuming collateral legal consequences in all probation revocation cases. Mr. Legg has simply alleged that "certain non-statutory consequences may occur." *Lane v. Williams*, 455 U.S. 624, 632 (1982). These types of "discretionary decisions . . . are not governed by the mere presence or absence of a recorded violation of [probation]; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the [probation] violation." *Id.* at 632–33. The mere existence of a probation revocation "does not render an individual ineligible for" probation under Utah law. *Id.* at 632 n.13. "It is simply one factor, among many, that may be considered by the [appropriate] authority in determining whether there is a substantial risk that the [defendant] will not conform to reasonable conditions of [probation]." *Id.*[4]

---

[4] *In re Giles*, 657 P.2d 285, doesn't require us to come to the opposite result. In *In re Giles*, we concluded that an appeal of a civil commitment was not moot because there were "collateral consequences that may be imposed upon appellant [that] might arise

(continued . . .)

¶30 Moreover, the first three potential collateral legal consequences are contingent upon Mr. Legg again violating state law. Mr. Legg himself is "able—and indeed required by law—to prevent such a possibility from occurring." *Id.* at 632 n.13.

¶31 We acknowledge that the potential legal consequence of a defendant becoming ineligible for a discretionary 402 reduction of the degree of his or her offense is statutorily mandated and cannot be avoided by conforming with the law. *See* UTAH CODE § 76-3-402. But not every successful probationer is eligible for a 402 reduction. Nor will every eligible probationer receive a reduction. The ultimate decision to grant a 402 reduction lies within the discretion of the judge. *See id.* § 76-3-402(2). For most probationers, the potential of a 402 reduction is, at most, highly speculative and nothing more than a

---

(continued . . .)

were he to face future confrontations with the legal system." *Id.* at 287.

But civil commitments share many similarities with criminal convictions. "[P]atients of mental hospitals . . . face similar deprivations of liberty" as criminals. *Id.* at 287. Additionally, at the time *In re Giles* was decided, being labeled "mentally incompetent" carried collateral legal consequences comparable to criminal convictions. *See In re Ballay*, 482 F.2d 648, 651–52 (D.C. Cir. 1973) ("[W]hile [a civil] commitment stands on the record, the party may face state constitutional and statutory restrictions on his voting rights; restrictions on his right to serve on a federal jury; restrictions on his ability to obtain a drivers license; and limitations on his access to a gun license." (footnotes omitted)).

Civil commitments do not share the same similarities with probation revocations. Moreover, unlike the use of previous commitment in future civil commitment hearings, a defendant is able to completely avoid the use of a probation revocation in a future sentencing decision by not committing a future violation of the law.

Additionally, since *In re Giles* was decided in 1982, there has been evolution in the federal case law about presuming collateral consequences in parole revocations that we find persuasive. *See generally Spencer*, 523 U.S. 1. As discussed herein, we adopt this reasoning and reject presumed collateral consequences in probation revocation cases.

mere possibility. Therefore, ineligibility for a 402 reduction isn't sufficient to presume collateral legal consequences in all cases of probation revocation. This conclusion doesn't foreclose the potential for loss of a 402 reduction to serve as an actual legal consequence that is sufficient to render a case not moot. Instead, a defendant will bear the burden of showing that his or her loss of a potential 402 reduction is sufficient to establish an actual adverse legal consequence.

¶32 Mr. Legg has failed to point us to numerous consequences imposed by law that would command the conclusion that some collateral legal consequence is inevitable for every defendant with a probation revocation. Based on the inapplicability of the underlying rationale for presuming collateral legal consequences in the case of criminal convictions, we decline to *presume* collateral legal consequences for probation revocations. Instead, a defendant wishing to challenge his or her probation revocation after the case has become moot must establish *actual* collateral legal consequences.

### B. Mr. Legg Failed to Demonstrate Any Actual Collateral Legal Consequences

¶33 Since we won't presume collateral legal consequences stem from a probation revocation, Mr. Legg must demonstrate actual collateral legal consequences to prevent his case from becoming moot. "[A] possibility rather than a certainty or even a probability" isn't enough to survive a mootness challenge. *Spencer*, 523 U.S. at 14-15. Rather, a defendant must show collateral legal consequences that "are not merely hypothetical or possible but that . . . are probable and represent actual and adverse consequences." *Barnett v. Adams*, 2012 UT App 6, ¶ 8, 273 P.3d 378. Additionally, these consequences must be imposed by law. *Phillips v. Schwendiman*, 802 P.2d 108, 110 (Utah Ct. App. 1990) ("A general averment . . . that appellants may suffer economic inconvenience or expenses resulting from the suspensions of their driver's licenses does not demonstrate a collateral consequence that is imposed by law because of the administrative action."); *see also Spencer*, 523 U.S. at 16 n.8 (rejecting harm to reputation as a sufficient collateral legal consequence).

¶34 Mr. Legg asserts three actual adverse consequences that he has suffered as a result of his probation revocation. First, Mr. Legg argues that his probation revocation will be used by AP&P as an aggravating factor in his pre-sentence investigation report (PSR) and can be used to enhance his sentence in a future criminal case. But this isn't an actual adverse harm that Mr. Legg will suffer. It's merely

speculative and a potential future possibility. Mr. Legg hasn't argued that he's again violated the law and will have his probation revocation used against him. And even if he had again violated the law, the potential use of his probation revocation against him in that case would still not be enough to overcome mootness.[5] Moreover, as the court of appeals noted, the district court isn't required to follow the sentencing recommendations in the PSR. *Legg II*, 2016 UT App 168, ¶ 44. The district court has "wide latitude and discretion in sentencing" that will only be overturned in very narrow circumstances. *State v. Killpack*, 2008 UT 49, ¶¶ 58–59, 191 P.3d 17 (citation omitted). Additionally, "the decision of whether to grant probation must of necessity rest within the discretion of the judge who hears the case." *Id.* ¶ 58 (citation omitted) (internal quotation marks omitted). Mr. Legg's probation revocation is simply a factor used in a decision that is made with the vast discretion of the district court. Thus, the potential future use of Mr. Legg's probation revocation in a future sentencing decision isn't a consequence imposed by law. Instead, it's hypothetical and speculative, which is insufficient to establish an actual adverse consequence to survive mootness.

¶35 Second, Mr. Legg asserts that prosecutors will be unwilling to provide Mr. Legg favorable offers or probation offers in future criminal cases. This too is dependent on Mr. Legg again violating state law. Even if Mr. Legg does violate the law, a prosecutor's decision not to offer Mr. Legg a favorable offer isn't imposed by law. "[T]raditional prosecutor discretion . . . . allows prosecutors to plea-bargain with offenders in some cases, saving the public the expense of criminal prosecutions." *State v. Martinez*, 2013 UT 23, ¶ 16, 304 P.3d 54 (citation omitted). A prosecutor's use of that discretion,

---

[5] Even where the defendant had already again violated the law, the United States Supreme Court found that the use of a parole revocation in a future parole decision was still a mere possibility that couldn't overcome mootness. *See Spencer*, 523 U.S. at 14. The court reasoned that a prior parole revocation doesn't render a defendant ineligible for parole and is simply a factor considered by the parole board, which has "almost unlimited discretion." *Id.* (citation omitted).

much like a district court's use of discretion in sentencing, isn't imposed by law and renders this potential consequence nothing more than speculative and hypothetical.[6]

¶36 Mr. Legg contends that our conclusion on the first two alleged consequences "does not consider the reality of recidivism." But this assertion does nothing to render the potential application of these consequences to Mr. Legg non-speculative or non-hypothetical. Nor does it make a district court's or prosecutor's use of their broad

---

[6] Although not dispositive to our holding, we note that Mr. Legg's arguments regarding potential use of his probation revocation in future sentencing decisions or favorable prosecutorial offers are even weaker given the procedural posture of this case. On this appeal, Mr. Legg is challenging the decision to revoke his probation in one of his cases. However, in Mr. Legg's first appeal, the court of appeals affirmed the district court's finding that Mr. Legg had committed one probation violation in both cases. *State v. Legg*, 2014 UT App 80, ¶ 21, 324 P.3d 656. That probation violation finding will remain in Mr. Legg's record in both cases regardless of the outcome of this appeal.

Additionally, Mr. Legg's probation was revoked in both his "aggravated assault with a deadly weapon" case and in his "possession of a dangerous weapon by a restricted person" case. However, Mr. Legg has only appealed the probation revocation in his aggravated assault case. Therefore, if we were to decide the merits of this case in Mr. Legg's favor, and it was ultimately determined that Mr. Legg's probation revocation shouldn't stand in the aggravated assault case, the probation revocation would still stand in the possession of a dangerous weapon case.

Of course, this isn't to say that the existence of one probation revocation could never cause actual collateral legal consequences merely because another probation revocation already exists on the defendant's record. But, in a situation such as this, where it's a probation revocation on the exact same probation violation, which occurred in two cases that were sentenced concurrently, we see even less potential for the challenged probation revocation to impact discretionary decisions.

discretion "imposed by law."[7] Moreover, "[w]e assume that [Mr. Legg] will conduct [his] activities within the law and so avoid prosecution and conviction." *Spencer*, 523 U.S. at 15 (citation omitted).

¶37 Finally, Mr. Legg argues that his probation revocation rendered him ineligible for a 402 reduction. Mr. Legg is correct that his probation revocation makes him ineligible for a 402 reduction. *See* UTAH CODE § 76-3-402(2)(a)(i) (requiring the defendant to be "successfully discharged from probation" to be eligible for a reduction). However, Mr. Legg hasn't presented us with any argument that he either (1) had an agreement with the prosecutors that they would recommend a 402 reduction if Mr. Legg successfully completed probation or (2) would have been a good candidate for a 402 reduction. Although we note that a judge still retains discretion as to whether or not to grant a 402 reduction, *id.* § 76-3-402(2)(a), we may consider whether a particular defendant's loss of a possible 402 reduction is sufficient to overcome mootness, specifically in circumstances where a 402 reduction isn't merely hypothetical or possible but significantly likely to occur. Unlike other discretionary decisions where a probation revocation simply operates as a factor to be considered, a probation revocation removes any discretion from the district court to grant a 402 reduction. *Id.* § 76-3-402(2)(a)(i). Because Mr. Legg hasn't made such a showing here, we don't find his ineligibility for a 402 reduction to be an actual collateral legal consequence in this case.

¶38 Overall, Mr. Legg has been unable to assert an actual collateral legal consequence he faces from his probation revocation. Therefore, his appeal is moot and we lack jurisdiction to consider the merits of his case.

---

[7] Mr. Legg's recidivism would certainly not be imposed by law. As we've noted, "Mr. Legg himself is able—and indeed required by law—to prevent such a possibility from occurring." *Supra* ¶ 30 (quoting *Lane*, 455 U.S. at 632 n.13) (internal quotation marks omitted).

**CONCLUSION**

¶39 When a defendant challenging his or her probation revocation serves out his or her sentence, the appeal becomes moot. Although we presume collateral legal consequences to avoid mootness in appeals of criminal convictions, we won't do so for appeals of probation revocations. Therefore, any defendant wishing to continue a moot appeal of a probation revocation must establish actual collateral legal consequences. Mr. Legg has failed to do so here. Thus, we conclude that his appeal is moot and affirm the court of appeals' decision to dismiss his appeal for mootness.

————————